*Gary Allmond v. Department of Health and Mental Hygiene*
No. 34, September Term 2015

**Constitutional Law – Due Process – Involuntary Medication of Mentally Ill Pretrial Detainee.** A statute permits a clinical review panel at a mental health facility to authorize the involuntary medication of a pretrial detainee in various circumstances, including when: (1) the medication is prescribed by a psychiatrist for the purpose of treating the individual's mental disorder, (2) the administration of the medication is a reasonable exercise of professional judgment, and (3) the individual is at substantial risk of continued hospitalization because the individual will remain seriously mentally ill with no relief, or for a significantly longer period of time, from the symptoms that resulted in the individual's hospitalization. Although the statute permits involuntary medication without a showing of dangerousness within the facility, it does not, on its face, violate the substantive due process guarantee of Article 24 of the Maryland Declaration of Rights. However, in order for an authorization of involuntary medication under the statute to be constitutional, there must be, in addition to medical appropriateness, an "overriding justification" for administering the treatment – such as a need to render the pretrial detainee competent for trial. Maryland Code, Health-General Article, §10-708(g).

Case Nos. 13C14101885 & 13C15101923
Circuit Court for Howard County
Argued: December 3, 2015

IN THE COURT OF APPEALS
OF MARYLAND

No. 34

September Term, 2015

_____

GARY ALLMOND

v.

DEPARTMENT OF HEALTH AND MENTAL
HYGIENE

_____

Barbera, C.J.
*Battaglia
Greene
Adkins
McDonald
Watts
Harrell, Jr., Glenn T.,
 (Retired, Specially
Assigned),
 JJ.

_____

Opinion by McDonald, J.

_____

Filed: July 11, 2016

*Battaglia, J., now retired, participated in
the hearing and conference of this case
while an active member of this Court;
after being recalled pursuant to the
Constitution, Article IV, Section 3A, she
also participated in the decision and
adoption of this opinion.

The State mental health law allows for the involuntary medication of an individual committed to a mental health facility if certain procedures are followed and if a clinical review panel – three health care professionals, none of whom is the treating psychiatrist – finds that certain statutory criteria are satisfied and authorizes the involuntary medication. Such an authorization remains valid for 90 days, after which a panel must review again the relevant criteria to authorize continued medication.

The criteria for authorizing involuntary medication are set forth in Maryland Code, Health-General Article ("HG"), §10-708(g). Among the circumstances in which the statute permits an individual to be medicated against the individual's will are when: (1) the medication is prescribed by a psychiatrist for the purpose of treating the individual's mental disorder; (2) the administration of the medication is a reasonable exercise of professional judgment; and (3) the individual is at substantial risk of continued hospitalization because the individual will remain seriously mentally ill with no relief, or for a significantly longer time, from the symptoms that resulted in the individual's hospitalization.

Applying those criteria, a clinical review panel authorized the forced medication of Petitioner Gary Allmond, a resident of a facility operated by Respondent Department of Health And Mental Hygiene ("DHMH"). That decision was affirmed by an administrative law judge when Mr. Allmond invoked his appeal rights under the statute. Mr. Allmond has pursued judicial review in the courts. Before us, he contends that, on its face, HG §10-708(g) violates the Maryland Declaration of Rights in permitting forced medication without a showing that he is dangerous to himself or others within the facility.

We hold that the statute is not unconstitutional on its face. However, we agree with Mr. Allmond that merely satisfying the challenged provisions of HG §10-708(g) alone does not ensure compliance with the substantive due process requirement of the Declaration of Rights. The authorization for involuntary medication may only be constitutionally carried out when there exists an "overriding justification," such as a need to render a pretrial detainee competent for trial.

In any event, the authorization for involuntary medication in this case expired long ago. As a consequence, a clinical review panel must apply the statutory criteria in a constitutional manner if DHMH seeks again to medicate Mr. Allmond against his will.

# I

## Background

We describe first the involuntary medication statute that is at the heart of this case and then the facts and proceedings that bring this case to us.

### A.    *Standards for Involuntary Medication*

In order to administer psychiatric medication to an individual confined in a mental health facility against the individual's will, the facility must satisfy the standards and follow the process set out in HG §10-708.

First, the facility may administer medication against an individual's will in an emergency pursuant to a physician's order when the individual presents a danger to the life or safety of others in the facility. HG §10-708(b)(1).

Second, and pertinent to this case, the facility may administer medication against an individual's will when the individual is hospitalized involuntarily or committed for

2

treatment pursuant to a court order[1] and a clinical review panel approves the use of the medication for the reasons allowed by the statute. HG §10-708(b)(2).

A clinical review panel is comprised of: (1) the clinical director of the psychiatric unit of the facility (if the clinical director is a physician) or a physician (if the clinical director is not), a psychiatrist, and a mental health professional other than a psychiatrist. HG §10-708(c)(1). If a member of the panel is directly responsible for treating the individual, another person is to be substituted for that particular review. HG §10-708(c)(2).

Among other things, the clinical review panel is to review the individual's clinical record, assist the individual and the treating physician in arriving at a mutually agreeable treatment plan, ascertain the reasons why the individual is refusing medication, and review the potential consequences of medication. HG §10-708(f). If the statutory criteria are met, a panel may authorize involuntary medication for up to 90 days. HG §10-708(m)(1).

---

[1] There are basically three categories of committed individuals to whom the statute applies:

1 - a defendant in a pending criminal case who is committed under a court order after being found incompetent to stand trial and dangerous, pursuant to Maryland Code, Criminal Procedure Article ("CP"), §3-106;

2 - a criminal defendant who is committed pursuant to a court order under CP §3-112 after a verdict of "not criminally responsible" is returned in the criminal case;

3 - an individual who is civilly committed pursuant to a court order under HG §10-632 as a result of findings that, among other things, the individual has a mental disorder, needs inpatient care as treatment, is unable or unwilling to be voluntarily admitted, and presents a danger to the life or safety of the individual or others.

For each of these categories, an individual may be released from confinement upon a finding that the individual is no longer a danger to self or others. *See* CP §3-106(b) and (c); CP §3-112(c)(2), §3-114(b); HG §10-632(e).

3

The statute provides directions for convening and conducting a meeting of a clinical review panel. HG §10-708(e). Among other things, the individual for whom medication has been recommended has the right to attend the meeting of the panel, to be assisted by a lay advisor,[2] to present information and witnesses, and to ask questions of others presenting information to the panel. However, the individual does not have a right to be present during the panel's deliberations. HG §10-708(e)(2)(i), (h)(2). The panel is to base its decision on its clinical assessment of the information contained in the individual's record and the information presented to the panel. HG §10-708(h)(1).

The individual has a right to an administrative appeal of the panel's determination before an administrative law judge ("ALJ") of the Office of Administrative Hearings. HG §10-708(k). The decision of the ALJ is considered a final decision under the contested case provisions of the State Administrative Procedure Act[3] and judicial review of the ALJ's decision may be pursued in a circuit court. HG §10-708(*l*).

To approve the administration of medication against the individual's will, a clinical review panel must make certain determinations. The statute outlines those determinations as follows:

> (g) The panel may approve the administration of medication or medications and may recommend and approve alternative medications if the panel determines that:

---

[2] The statute defines "lay advisor" as an individual at the facility "who is knowledgeable about mental health practice and who assists individuals with rights complaints." HG §10-708(a)(2).

[3] Maryland Code, State Government Article, §10-201 *et seq.*

4

(1) The medication is prescribed by a psychiatrist for the purpose of treating the individual's mental disorder;

(2) The administration of medication represents a reasonable exercise of professional judgment; and

(3) Without the medication, the individual is at substantial risk of continued hospitalization because of:

(i) Remaining seriously mentally ill with no significant relief of the mental illness symptoms that:
1. Cause the individual to be a danger to the individual or others while in the hospital;
2. Resulted in the individual being committed to a hospital under this title or Title 3 of the Criminal Procedure Article; or
3. Would cause the individual to be a danger to the individual or others if released from the hospital;

(ii) Remaining seriously mentally ill for a significantly longer period of time with the mental illness symptoms that:
1. Cause the individual to be a danger to the individual or to others while in the hospital;
2. Resulted in the individual being committed to a hospital under this title or Title 3 of the Criminal Procedure Article; or
3. Would cause the individual to be a danger to the individual or others if released from the hospital; or

(iii) Relapsing into a condition in which the individual is unable to provide for the individual's essential human needs of health or safety.

HG §10-708(g). As is evident, the first two conditions require that the treatment be medically appropriate – *i.e.,* that it was prescribed by a psychiatrist exercising reasonable professional judgment to treat the individual's mental disorder. Those conditions are not at issue in this case.

The third condition for involuntary medication – set forth in HG §10-708(g)(3) – consists of three subparagraphs that parse into seven alternative criteria that may be satisfied to authorize involuntary medication of an individual.  Two of those alternative criteria – HG §10-708(g)(3)(i)(1) and HG §10-708(g)(3)(ii)(1) – involve a finding that, without the medication, the individual's mental disorder causes the individual to be a danger to self or others within the facility.  The seventh alternative – HG §10-708(g)(3)(iii) – would require a finding that, without the medication, the individual would relapse into a condition in which the individual is unable to provide for essential human needs.  None of those three criteria are at issue in this case.

Mr. Allmond's challenge is addressed to the constitutionality of the remaining four alternative criteria.  In particular, at issue in this case is whether the criteria set forth in HG §10-708(g)(3)(i)(2), (g)(3)(i)(3), (g)(3)(ii)(2), and (g)(3)(ii)(3), in conjunction with the other criteria in the statute, can be applied constitutionally.  Because virtually all of the statutory provisions cited in the remainder of this opinion appear in either subparagraph (i) or subparagraph (ii) of HG §10-708(g)(3), for readability we will refer to the provisions at issue by subparagraph designations and refrain from repeating the identical statutory prefix in each instance – *e.g.*, HG §10-708(g)(3)(i)(2) will be referenced as "Subparagraph (i)(2)."

**B.    *Facts and Procedural History***

The circumstances of Mr. Allmond's commitment and the procedural path of this case are undisputed and can be briefly summarized.

6

*Criminal Charges and Commitment*

Mr. Allmond has been diagnosed with schizophrenia since 1985, when he was in his mid-20s. On September 1, 2011, police officers responded to a call concerning an assault in an apartment in Baltimore City. At the apartment, the officers found the body of a woman and Mr. Allmond, who told them that he was the caller, that he had had a dispute with his girlfriend, and that he had struck and strangled her.

Mr. Allmond was charged with first-degree murder. On January 4, 2012, following an evaluation by DHMH, the Circuit Court for Baltimore City determined that Mr. Allmond was incompetent to stand trial and committed him to DHMH for psychiatric hospitalization and treatment at Clifton T. Perkins Hospital Center in Jessup ("Perkins").[4] Such a determination does not necessarily mean that the individual is incapable of making

---

[4] The commitment was ordered pursuant to CP §3-106(b). That statute provides that, if a court finds that a criminal defendant is incompetent to stand trial and, because of a mental disorder, "is a danger to self or the person or property of another," the court may order the defendant committed to a facility designated by DHMH. The commitment under that provision ends when a court finds that the defendant is no longer incompetent, that the defendant is no longer a danger, or that there is "not a substantial likelihood that the defendant will become competent to stand trial in the foreseeable future." DHMH is to report to the court every six months on the status of the defendant and, in any event, whenever the defendant meets any of those criteria. CP §3-108(a). The court is also to periodically hold a hearing to assess whether the criteria for continued commitment of the defendant under CP §3-106 are met. CP §3-106(c). The statute sets time limits for dismissal of the criminal charges after passage of a specified period of time, unless the State petitions the court for extraordinary cause to extend the time. CP §3-107. In the case of a defendant who is unlikely to become competent in the foreseeable future, another provision of the statute provides for an involuntary civil commitment of the defendant under specified conditions. CP §3-106(d). We are informed by one of the amicus briefs in this case that public court records indicate that Mr. Allmond's status has been reviewed every six months, in accordance with the statute.

decisions concerning the individual's medical treatment – and no such determination was made in Mr. Allmond's case.[5]

*Treatment at Perkins*

According to Mr. Allmond's treating psychiatrist at Perkins, Mr. Allmond's condition has caused him to experience paranoia, delusions, hallucinations, and disorganized thinking. The medical personnel at Perkins have recommended various psychotropic medications to alleviate those symptoms, but Mr. Allmond has repeatedly refused those medications. Instead, Mr. Allmond prefers alternative forms of treatment, including psychotherapy and group therapy sessions. Nevertheless, his doctors believe that psychotropic medications are the only form of treatment that will alleviate his symptoms. According to his treating psychiatrist, despite the symptoms, Mr. Allmond has generally behaved well at Perkins, is well regarded by other patients on his ward, and has obtained the highest level of patient privileges at the hospital.

On September 3, 2014, during a medical treatment team meeting, Mr. Allmond's treatment team at Perkins suggested to him that he receive psychotropic medication. In response to that suggestion, according to the treatment team's account, Mr. Allmond became agitated and appeared to be about to assault one of the staff members. The treatment team then asked Mr. Allmond if he would like to take some sedative medications, whereupon Mr. Allmond became even more agitated. Security was eventually called to

---

[5] *See* Maryland Code, Estates & Trusts Article, §13-704 *et seq.* (appointment and powers of guardian for disabled person).

restrain Mr. Allmond. According to his treating psychiatrist, Mr. Allmond then attempted to assault a staff member.

*Determinations of Clinical Review Panel*

In the wake of the September 2014 incident, Mr. Allmond's psychiatrist requested that a clinical review panel be convened pursuant to HG §10-708 to determine whether Mr. Allmond should be medicated against his will. On September 8, 2014, the panel approved the involuntary administration of medication for Mr. Allmond for a period of 90 days.[6] Mr. Allmond did not appeal that decision.

In early December 2014, shortly before the 90-day period of authorized involuntary medication was due to expire, Mr. Allmond's psychiatrist requested that the clinical review panel reconvene to renew the authorization. The psychiatrist asked the panel to reconvene because he was concerned that Mr. Allmond would stop taking the medication and that his symptoms would worsen.

On December 4, 2014, the clinical review panel reconvened with Mr. Allmond present. The panel found that all six of the criteria under Subparagraph (i) and Subparagraph (ii) were met and authorized medication of Mr. Allmond against his will for another 90 days. In other words, the panel found that, without medication, there was a substantial risk that Mr. Allmond would require continued hospitalization because he

---

[6] This determination was made under the prior version of HG §10-708. *See* Part II.C.3 of this opinion below. As noted in the text, Mr. Allmond did not appeal the September 2014 determination and the clinical review panel's application of the prior version of the statute is not before us.

9

would remain seriously mentally ill (1) with no significant relief of his symptoms and (2) for a significantly longer time with those symptoms. In addition, the panel found, those symptoms had resulted in his original commitment and would cause him to be a danger to himself or others, whether in the hospital or released from it.[7]

*Hearing before ALJ*

Mr. Allmond requested an administrative hearing to appeal the panel's decision. On December 18, 2014, an ALJ of the Office of Administrative Hearings conducted a hearing. At that hearing, various records related to the clinical review panel's decision were introduced into evidence and Mr. Allmond's treating psychiatrist testified. The psychiatrist stated that, in his opinion, antipsychotic medications were necessary to treat Mr. Allmond appropriately and that his symptoms would worsen without such treatment. The psychiatrist conceded that, apart from the September 2014 incident, Mr. Allmond had been a "model patient" in terms of behavior.

Mr. Allmond did not present any testimony or other evidence at the hearing. His counsel argued that DHMH had failed to carry its burden of proof to establish that the statutory criteria for involuntary medication under HG §10-708(g) were satisfied. Counsel did not challenge the constitutionality of the statute.

---

[7] The panel did not find that the alternative criterion under Subparagraph (iii) was met – *i.e.,* that, without the medication, there was a substantial risk of continued hospitalization resulting from a relapse into a condition in which he would be unable to provide for his essential human needs.

The ALJ found that the first two of the three conditions under HG §10-708(g) – those concerning medical appropriateness – were readily met:   (1) the medications were prescribed by a psychiatrist for the purpose of treating Mr. Allmond's mental disorder and (2) the administration of the medication was a reasonable exercise of professional judgment.  With respect to the alternative criteria for satisfying the third condition set forth in the statute, the ALJ found that, without the medication, Mr. Allmond would remain seriously mentally ill with no relief of the symptoms that had resulted in his commitment to the hospital.  However, contrary to the conclusions of the clinical review panel, the ALJ concluded that Mr. Allmond was not a danger to himself or to others either within or outside the facility.  She found that the September confrontation with hospital staff was an isolated incident and that the homicide that resulted in his commitment to Perkins was remote in time.   Accordingly, the ALJ concluded that the criteria for involuntary medication were satisfied only under Subparagraphs (i)(2) and (ii)(2), but not under Subparagraphs (i)(1), (i)(3), (ii)(1), or (ii)(3).

*Judicial Review*

Shortly after the ALJ's decision, Mr. Allmond sought judicial review of that decision in the Circuit Court for Howard County.[8]  In the petition, Mr. Allmond argued generally that the standards for involuntary medication set forth in HG §10-708(g) are unconstitutional as violating both the Due Process Clause of the United States Constitution

_____

[8] Mr. Allmond filed two petitions for judicial review, one *pro se* on December 22, 2014, and another through counsel on January 5, 2015.  The Circuit Court consolidated the two cases.

11

and Article 24 of the Maryland Declaration of Rights. On January 23, 2015, the Circuit Court held a hearing regarding Mr. Allmond's petition. At that hearing, Mr. Allmond's counsel primarily advanced the constitutional argument for overturning the ALJ's affirmance of the panel determination.[9] The Circuit Court rejected that argument. Applying rational basis review, the Circuit Court concluded that HG §10-708(g) did not unreasonably abridge Mr. Allmond's constitutional rights and that the statute served a legitimate state interest. The Circuit Court issued an order that same day affirming the ALJ's decision.

Mr. Allmond then appealed the Circuit Court's decision to the Court of Special Appeals. While his appeal was pending in the intermediate appellate court, he filed a petition for a writ of *certiorari,* requesting that we review the constitutionality of HG §10-708(g). On May 22, 2015, we granted *certiorari* to consider that issue.

## II

### Discussion

In his petition for a writ of *certiorari*, Mr. Allmond raised the question whether HG §10-708(g) is contrary to the Maryland Declaration of Rights. In particular, he argues that the statute is unconstitutional on its face because it violates his right to substantive due process under Article 24 and his right to free speech under Article 40. Although his petition for judicial review of the ALJ's decision also invoked the United States Constitution and

---

[9] At the hearing, Mr. Allmond's counsel also asserted that the ALJ's decision was not based on substantial evidence. That issue was not raised in Mr. Allmond's petition for a writ of *certiorari* and is not before us in this appeal.

12

his argument before the Circuit Court discussed Supreme Court cases concerning the federal constitution, he now confines his arguments to the Maryland Declaration of Rights.

Preliminarily, however, we must decide whether, as DHMH argues, Mr. Allmond must return to the administrative forum to make his constitutional arguments there in order to exhaust his administrative remedies.

## A.      *Exhaustion of Administrative Remedies*

Mr. Allmond did not make any constitutional arguments before the ALJ.  DHMH argues that his failure to do so should result in this appeal – in which he has raised *only* constitutional issues before us – being dismissed because he failed to exhaust his administrative remedies.

Ordinarily, a party must exhaust administrative remedies before resorting to the courts, even when the party raises constitutional issues.  *See Maryland Reclamation Associates, Inc. v. Harford County*, 342 Md. 476, 493, 677 A.2d 567 (1996); *Maryland Reclamation Associates, Inc. v. Harford County, Maryland*, 382 Md. 348, 366, 855 A.2d 351 (2004).  However, in this case, Mr. Allmond did not go straight to court and circumvent the administrative process.  Rather, he invoked the administrative appeal process provided by statute.  It may be more precise to characterize his failing as a lack of preservation – *i.e.*, he followed the statute by beginning his appeal in the administrative forum, but failed to raise there the issues he now asks us to decide.

It would be within our discretion to decline to decide the constitutional issue, as DHMH urges.  "[Q]uestions, including Constitutional issues that could have been but were not presented to the administrative agency may not *ordinarily* be raised for the first time in

13

an action for judicial review." *Board of Physician Quality Assurance v. Levitsky*, 353 Md. 188, 208, 725 A.2d 1027 (1999) (emphasis added). However, this Court has discretion to address unpreserved issues "if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal." Maryland Rule 8-131(a). Ordinarily, we do not exercise this discretion, because it is best to allow a "proper record [to] be made with respect to the challenge" and "the other parties and the trial judge [to be] given an opportunity to consider and respond to the challenge." *Chaney v. State*, 397 Md. 460, 468, 918 A.2d 506 (2007).

Deciding the facial constitutionality of Subparagraphs (i) and (ii) against a substantive due process challenge, though, is one rare instance in which we will exercise our discretion to address an unpreserved issue, because none of the considerations recited above weighs against addressing the constitutional issue in this case. Mr. Allmond's challenge is to a statute that requires further agency action every 90 days, so it is extremely likely that, if we decline to resolve this issue on procedural grounds, there will be another appeal raising the same issue in just a few months.[10] On the other hand, if we decide this issue now, we may avoid the expense and delay of another appeal or at least focus the issues in any future appeal.

---

[10] Strictly speaking, the expiration of the authorization at issue in this case may render this case moot. *See Department of Health and Mental Hygiene v. Kelly*, 397 Md. 399, 438-39, 918 A.2d 470 (2007) (Wilner, J., concurring). Nonetheless, it is appropriate to address the substantive due process issue raised here, as it is capable of repetition yet evading review. *See Beeman v. Department of Health & Mental Hygiene*, 105 Md. App. 147, 157, 658 A.2d 1172 (1995).

Also, Mr. Allmond asserts that he is challenging the statute on its face and that no factual record needs to be made for a facial challenge. This is largely correct. An as-applied challenge depends on the challenger's circumstances, but a facial challenge can be resolved without delving into the particular circumstances of the challenge. We need only ensure that there are sufficient facts to show that Mr. Allmond has standing to make this challenge. It is certainly undisputed that Mr. Allmond has been the subject of several orders authorizing forced medication under HG §10-708.[11] Finally, while the ALJ never had the opportunity to consider and respond to the constitutional challenge, the Circuit Court did, and the parties have adequately briefed the substantive due process issue before this Court, so there is no question of surprise or inadequate opportunity to consider and respond.

The same cannot be said of Mr. Allmond's challenge to HG §10-708(g) as a violation of the constitutional free speech guarantee. That challenge was raised for the first time in this Court and the parties have devoted scant attention to it in their briefs. Given our disposition of the substantive due process challenge, we think it unlikely that deciding the newly-raised issue will avoid the expense and delay of another appeal. Under Maryland Rule 8-131(a), therefore, we decline to exercise our discretion to consider the free speech challenge and limit our review to Mr. Allmond's substantive due process challenge.

---

[11] While this appeal has been pending, we granted Mr. Allmond's request for a stay for the duration of this appeal of another ALJ's order authorizing forcible medication under the statute.

## B.    *Standard of Review*

In a case concerning the merits of a final administrative agency decision – such as that of the ALJ in this case – we review directly the administrative decision, not the decisions of the courts that previously reviewed the agency decision before it came to us. *Comptroller v. Science Applications Int'l Corp.*, 405 Md. 185, 192, 950 A.2d 766 (2008).

In reviewing an agency's fact findings, we apply a substantial evidence test, which is deferential to the agency's determinations. *Gore Enterprise Holdings, Inc. v. Comptroller,* 437 Md. 492, 504, 87 A.3d 1263 (2014). As noted above, because Mr. Allmond asserts a facial challenge, the merits of the ALJ's fact findings are not at issue in this appeal.

With respect to the legal issues, the ALJ did not have the opportunity to consider the constitutional challenge and, although the Circuit Court did, it did not engage in any extended analysis. In any event, we generally review conclusions of law by an agency or lower court, including any concerning constitutional issues, without special deference. *Lawson v. Bowie State Univ.*, 421 Md. 245, 256, 26 A.3d 866 (2011).

## C.    *Whether the Statutory Criteria Satisfy Article 24 (Substantive Due Process)*

1.    Relationship of federal and state substantive due process guarantees

Mr. Allmond challenges certain provisions of HG §10-708(g) on the basis that they violate Article 24 of the Maryland Declaration of Rights, which provides "[t]hat no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." This is the Maryland counterpart of the Due Process Clauses found in the Fifth and Fourteenth Amendments to

16

the United States Constitution.  Unless there is good reason to do otherwise, "state constitutional provisions [such as Article 24] are in *pari materia* with their federal counterparts or are the equivalent of federal constitutional provisions or generally should be interpreted in the same manner as federal provisions."  *Dua v. Comcast Cable of Maryland, Inc.*, 370 Md. 604, 621, 805 A.2d 1061 (2002).  While this does not mean that a state constitutional provision will always be interpreted in the same way as its federal counterpart, cases concerning a federal constitutional provision are persuasive authority as to a Maryland counterpart. *Id.*

Neither party in the case has presented any reason that our interpretation of the Article 24 of the Maryland Declaration of Rights should differ from interpretations of the analogous provisions of the federal constitution, and we perceive none, so we interpret Article 24 to provide the same protections in this case as do the Due Process Clauses of the United States Constitution.  *See Pitsenberger v. Pitsenberger*, 287 Md. 20, 410 A.2d 1052 (1980).

   2.  Supreme Court precedent

Mr. Allmond argues that forcibly medicating him deprives him of his substantive due process rights.  "Substantive due process" – a somewhat opaque phrase that has been compared to "green pastel redness" for its seemingly oxymoronic quality[12] – refers to the principle that there are certain liberties protected by the due process clauses from legislative restrictions, regardless of the procedures provided, unless those restrictions are narrowly

---

[12] S*ee* John Hart Ely, Democracy and Distrust 18 (1980)**.**

17

tailored to satisfy an important government interest. *See Reno v. Flores*, 507 U.S. 292, 302 (1993). One such liberty is "avoiding the unwanted administration of antipsychotic drugs."[13] *Washington v. Harper*, 494 U.S. 210, 221 (1990); *Williams v. Wilzack*, 319 Md. 485, 508, 573 A.2d 809 (1990). Although this Court has never considered the contours of that liberty interest, the Supreme Court has done so in three decisions rendered during the past quarter century. *Washington v. Harper, supra; Riggins v. Nevada*, 504 U.S. 127 (1992); *Sell v. United States*, 539 U.S. 166 (2003).

> *Washington v. Harper**: Involuntary medication of convicted prisoner who is dangerous to self or others is permissible when medically appropriate and reasonably related to legitimate penological interests.*

In *Washington v. Harper*, the Supreme Court held that the State of Washington could forcibly medicate a prisoner who suffered from a mental disorder such that he posed a likelihood of serious harm to himself, others, or property, provided such medication was medically appropriate. 494 U.S. at 225. The Supreme Court stated that "the proper standard for determining the validity of a prison regulation claimed to infringe on an inmate's constitutional rights is to ask whether the regulation is reasonably related to

---

[13] A similar interest is recognized in the common law under the doctrine of informed consent – a doctrine that "follows logically from the universally recognized rule that a physician, treating a mentally competent adult under non-emergency circumstances, cannot properly undertake to perform surgery or administer other therapy without the prior consent of his patient." *Mack v. Mack*, 329 Md. 188, 210, 618 A.2d 744 (1993) *quoting Sard v. Hardy*, 281 Md. 432, 438-39, 379 A.2d 1014 (1977). A corollary to the doctrine of informed consent is that a patient has a right to refuse treatment, subject to countervailing State interests, such as the preservation of life, protection of innocent third parties, prevention of suicide, and maintenance of the ethical integrity of the medical profession. *Mack,* 329 Md. at 210 & n. 7.

legitimate penological interests." *Id.* at 223 (internal quotation marks omitted). This reasonableness review applies to prison regulations "even when the constitutional right claimed to have been infringed is fundamental, and the State under other circumstances would have been required to satisfy a more rigorous standard of review," because convicted prisoners have reduced liberty interests. *Id.* The Court explicitly rejected the contention that, as a precondition to involuntary treatment, the State was required to find that the prisoner was incompetent to make treatment decisions and to obtain court approval of treatment under a "substituted judgment" standard. *Id.* at 226.

The Supreme Court went on to assess whether the administrative procedures provided by the Washington statute comported with procedural due process and concluded that they did. 494 U.S. at 228-36.

> *Riggins v. Nevada: Involuntary medication of pretrial detainee is permissible when medically appropriate and either (1) essential for safety or (2) necessary to obtain adjudication of criminal charges.*

In *Riggins v. Nevada*, the Supreme Court held that a lower court applied the wrong standard when a pretrial detainee made a substantive due process challenge to involuntary medication. First, reiterating the holding of *Harper*, which it articulated as "forcing antipsychotic drugs on a convicted prisoner is impermissible absent a finding of overriding justification and a determination of medical appropriateness," the Supreme Court added that "[t]he Fourteenth Amendment affords at least as much protection to persons the State detains for trial." 504 U.S. at 135. The Court then observed that, in this case, "the [lower] court simply weighed the risk that the defense would be prejudiced by changes in [the defendant's] outward appearance against the chance that [the defendant] would become

19

incompetent if taken off [medication], and struck the balance in favor of involuntary medication." *Id.* at 136. Instead, the trial court should have determined whether "administration of antipsychotic medication was necessary to accomplish an essential state policy." *Id.* at 138. The Court specifically disclaimed a standard of strict scrutiny. *Id.* at 136. The Court observed that the State "certainly would have satisfied due process if the prosecution had demonstrated, and the District Court had found, that treatment with antipsychotic medication was medically appropriate and, considering less intrusive alternatives, essential for the sake of [the defendant's] own safety or the safety of others." *Id.* at 135. "Similarly, the State might have been able to justify medically appropriate, involuntary treatment with the drug by establishing that it could not obtain an adjudication of [the defendant's] guilt or innocence by using less intrusive means." *Id.* The case was remanded for further findings.

> *Sell v. United States: Involuntary medication of pretrial detainee permissible to render detainee competent for trial only if treatment is medically appropriate and is necessary to further important trial related interests.*

Finally, in *Sell v. United States*, the Supreme Court held that "the Constitution permits the Government involuntarily to administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests." 539 U.S. at 179. The Court emphasized that this standard contains four requirements. "First, a court must find that *important* governmental interests are at stake."

20

*Id.* at 180. "Second, the court must conclude that involuntary medication will *significantly further* those concomitant state interests." *Id.* at 181. Third, the court must conclude that involuntary medication is *necessary* to further those interests." *Id.* "Fourth, ... the court must conclude that administration of the drugs is *medically appropriate, i.e.,* in the patient's best medical interest in light of his medical condition." *Id.*

*Summary*

For our purposes, this trio of cases amounts to the following: There is a substantive due process right to refuse psychotropic drugs. *Harper*, 494 U.S. at 223. For convicted prisoners, a reasonableness test applies. *Id.* For pretrial detainees, the medication must be "necessary to accomplish an essential state policy." *Riggins*, 504 U.S. at 138. In any event, there must be "a finding of overriding justification and a determination of medical appropriateness." *Id.* at 135. Overriding justifications include preventing danger to the detainee's self or others in the facility and making a detainee competent to stand trial for a serious crime. *Harper*, 494 U.S. at 225; *Riggins*, 504 U.S. at 135; *Sell*, 539 U.S. at 180.

3.   Evolution of the Maryland statute

HG §10-708 was first enacted in 1984. Chapter 480, Laws of Maryland 1984. It authorized involuntary medication in non-emergency situations when an individual was hospitalized involuntarily under a court order and the medication was approved by a clinical review panel. The statute provided some general guidance for the determination by a clinical review panel, but said little about what process a panel should employ. Nor did the statute elaborate criteria for the decision to authorize involuntary medication other than to say that a panel could *not* authorize medication when there was an alternative

21

treatment acceptable to both the individual and the treatment team. *See* HG §10-708(c)(2) (1990 Repl. Vol.).

A constitutional challenge to the involuntary medication statute came before this Court in *Williams v. Wilzack*, 319 Md. 485, 573 A.2d 809 (1990). Applying the Supreme Court's guidance in *Washington v. Harper*, *supra*, this Court held that the original version of HG §10-708 "did not afford the requisite procedural due process protections to which [an individual] was entitled." *Williams*, 319 Md. at 509-10. Unlike the Washington state procedures approved in *Harper*, the original version of HG §10-708 did not require that the individual be provided with advance notice of the clinical review panel. *Id.* at 509. It also did not give the individual "the right to be present, to present evidence, to cross-examine witnesses, [and] to have the assistance of an advisor who understands the psychiatric issues involved."[14] *Id.* The individual in *Williams* was given only five minutes notice of the clinical review proceeding, and his lawyer, who was permitted to be present, was given only 45 minutes notice. *Id.* As a result, this Court struck down the statute as unconstitutional.

After the *Williams* decision, the General Assembly re-enacted HG §10-708, incorporating many of the procedural protections addressed in *Williams*. *See* Chapter 385, Laws of Maryland 1991. In that iteration of the statute, the medical appropriateness

---

[14] It also did not expressly provide a right to judicial review, but this Court noted that "under Maryland common law, the courts may always review and correct actions by an administrative agency which are arbitrary, illegal, capricious or unreasonable." *Williams*, 319 Md. at 509.

conditions – HG §10-708(g)(1) and (g)(2) – were identical to what appears in the statute today, but in (g)(3), only Subparagraph (iii) was the same as it is today. In the 1991 version of the statute, Subparagraphs (i) and (ii) allowed forcible medication when:

> (3) Without the medication, the individual is at substantial risk of continued hospitalization because of:
>
> (i) Remaining seriously mentally ill with no significant relief of the mental illness symptoms that cause the individual to be a danger to the individual or to others; [or]
>
> (ii) Remaining seriously mentally ill for a significantly longer period of time with mental illness symptoms that cause the individual to be a danger to the individual or to others;

A question arose as to whether the reference to dangerousness that appeared in both Subparagraphs (i) and (ii) required a finding of dangerousness within the facility. In *Department of Health & Mental Hygiene v. Kelly*, 397 Md. 399, 918 A.2d 470 (2007), this Court held that the references to dangerousness in Subparagraphs (i) and (ii) implicitly referred only to dangerousness in the facility, much as Subparagraphs (i)(1) and (ii)(1) expressly do today.[15]

The statute was amended effective October 1, 2014, to its current version which, in adding Subparagraphs (i)(2), (i)(3), (ii)(2), and (ii)(3), permits the authorization of involuntary medication in some circumstances without a showing of dangerousness to the individual or others within the facility. *See* Chapters 314, 315, Laws of Maryland 2014.

---

[15] As a result of this construction of the statute, the Court found it unnecessary to address the constitutional challenges raised in that case. *Kelly,* 397 Md. at 418 n.6.

4. Mr. Allmond's facial challenge of the statute

Mr. Allmond argues that, absent a finding that, in an unmedicated state, he is a danger to himself or others within the facility − *i.e.,* a finding that either Subparagraph (i)(1) or Subparagraph (ii)(1) is satisfied – DHMH may not medicate him against his will. Mr. Allmond characterizes his challenge as a "facial" challenge to Subparagraphs (i)(2), (i)(3), (ii)(2), and (ii)(3).[16]

Under Maryland law, we resolve such challenges under the "no set of circumstances" test: the law is invalid if, and only if, the challenger can demonstrate that "no set of circumstances exist under which the Act would be valid." *Koshko v. Haining*, 398 Md. 404, 426, 921 A.2d 171 (2007) *quoting United States v. Salerno*, 481 U.S. 739, 745 (1987); *see also King v. State*, 425 Md. 550, 600, 42 A.3d 549 (2012), *rev'd on other grounds*, 133 S. Ct. 1958 (2013). Crucially, though, the "no set of circumstances" test "consider[s] only applications of the statute in which it actually authorizes or prohibits conduct." *City of Los Angeles, Calif. v. Patel*, 135 S. Ct. 2443, 2451 (2015). Thus, a facial challenge to the relevant provisions of HG §10-708(g) can succeed only if there is no set of circumstances

---

[16] The ALJ did *not* authorize involuntary medication based on a finding that Mr. Allmond would be a danger to self or others if released from the hospital – the alternative criteria set forth in Subparagraphs (i)(3) and (ii)(3). The ALJ rested her decision solely on Subparagraphs (i)(2) and (ii)(2), which involved findings that Mr. Allmond was at substantial risk of continued hospitalization because he would remain seriously mentally ill with the symptoms that resulted in his commitment under CP §3-106. Commitment under CP §3-106 involves a judicial determination, renewed at specified intervals, that, among other things, a pretrial detainee would be a danger to self or others in the community. Thus, in a case such as this, the criteria set forth in Subparagraphs (i)(2) and (ii)(2) substantially overlap with those in Subparagraphs (i)(3) and (ii)(3), even if the ALJ did not rest her decision on the latter criteria.

under which these provisions (and no others)[17] authorize involuntary medication of an individual and doing so is constitutional. If we can imagine any set of circumstances under which these subparagraphs can be constitutionally applied, then the challenge fails.

We can imagine such a set of circumstances. Suppose the State desired to make a pretrial detainee competent to stand trial for a serious crime and was able to meet all the requirements of *Sell* for involuntarily medicating that individual. Then medication of the individual would be constitutional. However, the State could not simply go ahead and medicate the detainee; the State would need statutory authorization in order for involuntary medication to be lawful. The statutory authorization may be found in HG §10-708, provided that the procedures in the statute are followed and the statutory criteria are satisfied. Thus, suppose further that, while the detainee was not dangerous within the facility without the medication, the detainee nonetheless was at substantial risk of continued hospitalization because of remaining seriously mentally ill with no significant relief of the mental illness symptoms that resulted in the individual being committed to a hospital. Then the State invoked Subparagraph (i)(2) to forcibly medicate the prisoner. In this scenario, involuntary medication would be constitutional, and Subparagraph (i)(2)

_____

[17] If the person were at substantial risk of continued hospitalization because of remaining seriously mentally ill with no significant relief of the mental illness symptoms that cause the individual to be a danger to the individual or others while in the hospital *and also* was at substantial risk of continued hospitalization because of remaining seriously mentally ill with no significant relief of the mental illness symptoms that resulted in the individual being committed to a hospital – *i.e.*, the circumstances satisfied both Subparagraph (i)(1) and Subparagraph (i)(2) – then Subparagraph (i)(2) would have no effect, because a concededly constitutional provision of law would authorize the involuntary medication. Hence, we do not consider such a scenario, or anything analogous.

25

provides the statutory authority to forcibly medicate. Hence, in this scenario, Subparagraph (i)(2) could be applied constitutionally.[18] Similar scenarios could be described for other challenged provisions.

As a result, Mr. Allmond's facial challenge must fail, albeit barely. Subparagraphs (i)(2), (i)(3), (ii)(2), and (ii)(3) can be applied constitutionally – but only if they are applied under the standards set forth in *Harper*, *Riggins*, and *Sell*.

5. The State's proposed justifications

DHMH suggests that it can satisfy the constitutional minimum by meeting the standards in the statute and no more. DHMH observes that the Supreme Court's list of overriding justifications is not explicitly exclusive, so it suggests a few more that it believes would serve to override a pretrial detainee's liberty interest. In our view, none are sufficient.

First, DHMH suggests that it has an interest in providing medical care to those committed to its custody, because it is required to provide such care. *See* CP §§3-106 and 3-112(a); HG §7.5-205(b)(1). However, if this interest were sufficient to justify involuntary medication, then the two requirements of medical appropriateness and overriding justification would really be one requirement: there would be an overriding justification for any medically appropriate treatment, because the State has an interest in

_____

[18] The State has not argued that Mr. Allmond's situation resembles this hypothetical example in any pertinent respect. Nonetheless, in responding to a facial challenge, the State need not do so.

26

providing medically appropriate treatment. It seems unlikely that this is what the Supreme Court meant in *Riggins* when it referred to the two requirements of "a finding of overriding justification and a determination of medical appropriateness." *See* 504 U.S. at 135. This interest alone is not sufficient.

Second, as an alternative justification, DHMH suggests that it has a significant interest in shortening the length of an individual's in-patient care for two reasons. One reason is that the State has an obligation under the Americans with Disabilities Act ("ADA") to provide care in the least restrictive setting possible. *See* 42 U.S.C. §12132; *Olmstead v. L.C.*, 527 U.S. 581 (1999). However, the individual's continued mental illness prevents the State from releasing the individual to the community, which would be less restrictive than a mental hospital. DHMH does not contend, though, that it is not in compliance with the ADA at present, or that an individual's continued mental illness is likely to put the State out of compliance with the ADA. The least restrictive setting possible is defined in part by what is *possible*, and the State already does what it can. It simply would prefer a less restrictive setting than what is now practically available to it. The State has no need under the ADA to expand the realm of possibility. Such a desire does not constitute an overriding justification.

A second reason that DHMH suggests that it has a significant interest in shortening the length of an individual's in-patient care is that the State would like to make optimal use of its resources. An individual who needs medication but does not receive it is unlikely to experience reduced symptoms and may even experience worsening symptoms instead. *See, e.g.*, Penttila, Jaaskelainen, *et al.*, *Duration of Untreated Psychosis as Predictor of*

27

*Long-Term Outcome in Schizophrenia: Systematic Review and Meta-Analysis*, 205 British J. Psychiatry 88 (2014) ("Long DUP [duration of untreated psychosis] correlated statistically significantly with poor general symptomatic outcome, more severe positive and negative symptoms, lesser likelihood of remission and poor social functioning and global outcome. . . . Long DUP was not associated with employment, quality of life or hospital treatment"). Meanwhile, other individuals who need treatment may not receive all that they otherwise could, because resources are limited.

There is no question that resource allocation is a valid concern, but this, too, would collapse medical appropriateness and overriding justification into one inquiry. Nearly any treatment that is medically appropriate would have a fair chance of shortening the length of the individual's in-patient care; one of the primary goals of medicine is to make the patient well enough to return to ordinary life, so nearly every treatment is at least intended to serve this purpose. The Supreme Court precedent does not say that the State's burden is merely to show that the treatment is medically effective; the State also must show that there is some separate reason that treatment is necessary.

In short, none of these additional justifications constitute an "overriding justification" for the purpose of medicating an individual against the individual's will when the individual is not being held as a result of a criminal conviction. The State must meet the standards of *Harper*, *Riggins*, and *Sell* in order to subject a pretrial detainee to involuntary medication. For a pretrial detainee like Mr. Allmond, *Riggins* and *Sell* approve the State interests in preventing harm to the individual or others and in making the individual competent to stand trial. The State has presented no other sufficient interests in this appeal.

28

Thus, although the statute can be applied constitutionally, if the State offers nothing more than the bare minimum to satisfy the statute – that the individual has the same symptoms as resulted in the individual's hospitalization or that the individual would be dangerous if released – then application of this statute would not be constitutional.[19]

### III

### Conclusion

For the reasons set forth above, the judgment of the Circuit Court is affirmed. In the interest of clarity, we note that this does not mean that Mr. Allmond can immediately be medicated against his will. HG §10-708(m) requires that treatment pursuant to HG §10-708 not "be approved for longer than 90 days," and as best we know from the record it has been more than 90 days since the panel authorized involuntary medication of Mr. Allmond. As a result, the State may not medicate Mr. Allmond against his will without convening another clinical review panel, which, of course, must comply with the standards in this opinion in order to apply the statute constitutionality.

> **JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

---

[19] At times, both Mr. Allmond and the State have argued this case by referring to the specific facts of Mr. Allmond's case, as if this case were an as-applied challenge. Because this case has been presented as a facial challenge, we have not addressed the arguments regarding Mr. Allmond's particular facts, except insofar as they bear on the facial challenge.