*Fredia Powell, et al. v. Maryland Department of Health, et al.*
No. 77, September Term 2016


**Civil Procedure – Mootness – Issue Capable of Repetition, Yet Evading Review**.
Appellants were criminal defendants who had been found incompetent to stand trial and
were committed for treatment at a psychiatric hospital. None of them was admitted to the
hospital by the deadline specified in their commitment orders. They collectively brought
suit challenging that delay as a violation of the statute authorizing their commitment and
of the Maryland Declaration of Rights. However, each of the Appellants had ultimately
been admitted to the hospital well before the case reached the Court of Appeals. Although
courts ordinarily will not decide a moot issue, the Appellants' challenge would be
considered under an exception to the mootness doctrine for cases that raise an issue
"capable of repetition, yet evading review."

**Criminal Procedure – Commitment of Defendant Found Incompetent to Stand Trial
and Dangerous as a Result of a Mental Disorder.** When a defendant in a criminal case
is alleged to be incompetent to stand trial, the trial court is to determine, pursuant to statute,
the competency, dangerousness, and restorability to competence of the defendant. If all
three criteria are met, the court may commit the defendant to a psychiatric hospital
designated by the Maryland Department of Health for treatment. A failure by the
Department to admit the defendant to a designated facility on the timetable specified in the
commitment order may be a violation of the order, but is not a violation of the statute itself,
which does not require admission on a specific timetable or explicitly authorize the trial
court to set a deadline. Maryland Code, Criminal Procedure Article, §3-104 through §3-
108.

**Due Process – Commitment of Defendant in Criminal Case Found Incompetent to
Stand Trial and Dangerous.** A defendant in a criminal case may be detained in custody
pending trial without violating the defendant's due process liberty interest when detention
is justified by important governmental interests such as ensuring the defendant's presence
for trial and protecting the public. When a court finds a defendant incompetent to stand
trial and dangerous to self or others as a result of a mental disorder, the defendant may not
be continued in detention with respect to the criminal case (as opposed to a separate civil
commitment) unless, within a reasonable time, the State undertakes efforts to restore the
defendant to competence. An unreasonable delay in the transfer of an incompetent
defendant who is the subject of a commitment order from pretrial detention to the
designated psychiatric hospital violates the defendant's substantive due process rights.
Article 24, Maryland Declaration of Rights.

Circuit Court for Baltimore City
Case No. 24-C-16-003484
Argument: March 31, 2017

IN THE COURT OF APPEALS
OF MARYLAND

No. 77

September Term, 2016

_____

FREDIA POWELL, ET AL.

V.

MARYLAND DEPARTMENT OF HEALTH, ET AL.

_____

Barbera, C.J.
Greene
Adkins
McDonald
Hotten
Getty
Raker, Irma S. (Senior Judge,
Specially Assigned),

JJ.

_____

Opinion by McDonald, J.
Getty, J., dissents.

_____

Filed: August 28, 2017

A criminal prosecution may not proceed against a defendant who is not competent to stand trial. For that reason, a defendant may not be continued in pretrial detention unless the government is taking steps to provide treatment to restore the defendant to competence or to have the defendant civilly committed. Maryland law provides for a trial court to determine whether a defendant is competent, is dangerous to self or others, and, if incompetent, has the potential to be restored to competence. If these criteria are met, the trial court may commit the defendant to a mental health facility designated by Appellee Maryland Department of Health[1] ("MDH") for appropriate treatment to restore the defendant to competence. Maryland Code, Criminal Procedure Article ("CP"), §3-104 *et seq.* This case concerns implementation of that law within constitutional parameters.

MDH and its head, Appellee Secretary of Health,[2] have adopted a policy on admission to State psychiatric hospitals to manage the demand for the limited beds available at those facilities. That policy has resulted in the creation of a waiting list for admission to State psychiatric hospitals – a list that has included criminal defendants who

---

[1] During the pendency of this appeal, the official name of the Appellee agency was changed from the "Department of Health and Mental Hygiene" to the "Maryland Department of Health" as of July 1, 2017. Chapter 214, Laws of Maryland 2017. The same law changed the title of the head of that department from the "Secretary of Health and Mental Hygiene" to the "Secretary of Health." *Id*.

[2] The incumbent Secretary resigned while this case was on appeal. Because he was sued in his official capacity, his successor will be substituted as a defendant pursuant to Maryland Rule 2-241(a)(5). We recognize that there is currently a dispute between the executive and legislative branches concerning appointment of his successor. We express no opinion on the merits of that dispute, but simply note that whoever heads MDH will be bound by the resolution of this case.

have been found incompetent to stand trial and committed for treatment, including the four Appellants in this case. The Circuit Court for Baltimore City – at least in the four instances spotlighted in this case – has adopted a practice of requiring admission of a defendant to a hospital within one day of the issuance of the commitment order.

In this case, the Circuit Court found each of the Appellants – defendants in separate criminal cases – to be incompetent to stand trial and dangerous. The court committed each of them to a State psychiatric facility pursuant to the statute and ordered their admission within one day of the commitment order. When MDH failed to admit them by that deadline, they collectively brought this action challenging the MDH policy on statutory and constitutional grounds.

We hold that the statute itself does not set a deadline for admission to a psychiatric hospital. Nor does it authorize a circuit court to do so. Accordingly, a delay in admitting a criminal defendant by a deadline set forth in a commitment order does not violate the statute, although it may violate the commitment order. Nevertheless, depending on the circumstances of the particular case, such delay may violate the due process guarantee of the Maryland Declaration of Rights unless the delay is reasonable under the circumstances of the particular case.

# I

## Background

### A. *Procedures Concerning Defendants Found Incompetent to Stand Trial*

*Competency Standard*

Under the common law, a criminal prosecution could not proceed if the defendant was unable, as a result of a mental or physical disability, to understand the proceedings or to assist in the defense. A criminal defendant in that condition is said to be incompetent to stand trial.[3] *See* Note, *Incompetency to Stand Trial*, 81 Harv. L. Rev. 454 (1967). That standard has prevailed in Maryland since 1967. *Raithel v. State*, 280 Md. 291, 297-98 (1977); *see also* CP §3-101(f) ("'[i]ncompetent to stand trial' means not able: (1) to understand the nature or object of the proceeding; or (2) to assist in one's defense."). Because the prohibition against trying or convicting an incompetent defendant is considered "fundamental to the adversary system of justice," it is also an element of the due process right to a fair trial under the United States Constitution. *Drope v. Missouri*, 420 U.S. 162, 172 (1975). While the State thus has no legitimate interest in criminally prosecuting a defendant who is incompetent to stand trial, it does have an interest in

---

[3] The condition of being incompetent to stand trial is to be distinguished from the defense of "not criminally responsible by reason of insanity." The former concerns the mental condition of the defendant at the time of prosecution; the latter concerns the mental condition of the defendant at the time of the alleged offense. *See* CP §3-109 through 3-114 (procedures relating to defense of not criminally responsible and commitment of defendant); Maryland Rule 4-242(b)(1) (entry of plea of not criminally responsible); 4-314 (trial procedure when defendant raises defense of not criminally responsible).

restoring a defendant to competency for the purpose of resolving the criminal charges. *See Allmond v. Dept. of Health & Mental Hygiene*, 448 Md. 592, 608-13 (2016).

*Trial Court Determination*

Under Maryland law, trial courts are charged with determining whether a defendant is in fact incompetent to stand trial and, if so, what to do about it. CP §§3-104 through 3-108. If it appears that a defendant may be incompetent to stand trial (or the defense alleges incompetence), the trial court must determine, from "evidence presented on the record," whether the defendant is in fact competent to stand trial. CP §3-104. Part of the evidence considered by the court may be a report from MDH following its examination of the defendant.

*Examination of Defendant for Competence and Dangerousness*

To obtain an assessment by MDH, the court may order MDH to examine the defendant and submit a report to the court, the prosecutor, and defense counsel concerning whether the defendant is competent to stand trial. CP §3-105(d)(1). If, upon examination, MDH determines that the defendant is incompetent to stand trial, the report must include a supplementary opinion concerning "whether, because of mental retardation or mental disorder, the defendant would be a danger to self or the person or property of another, if released." CP §3-105(d)(3).

*Disposition after Determination of Incompetence*

If the court finds that the defendant is incompetent to stand trial, but is not dangerous to self or the person or property of others, the court is to set bail or release the defendant on personal recognizance. CP §3-106(a). The court is then required to hold a

4

hearing at least annually to reconsider the issues of competence and dangerousness. CP §3-106(f).

If, however, the court finds that the defendant is dangerous as well as incompetent, "the court may order the defendant committed to the facility that [MDH] designates until the court finds that: (i) the defendant no longer is incompetent to stand trial; (ii) the defendant no longer is, because of mental retardation or a mental disorder, a danger to self or the person or property of others; or (iii) there is not a substantial likelihood that the defendant will become competent to stand trial in the foreseeable future." CP §3-106(b)(1).[4] In other words, the three criteria for commitment and retention of a criminal defendant in a psychiatric hospital under this provision can be understood as incompetence, dangerousness, and restorability. *See State v. Ray*, 429 Md. 566, 578-79 (2012).

If the court finds that a defendant meets these criteria[5] and commits the defendant, the court is to conduct a hearing at least once a year from the commitment date to determine whether the defendant continues to meet the criteria for commitment. CP §3-106(c)(1)(i). The court may hold earlier or additional hearings on its own initiative, upon

---

[4] If the defendant is committed "because of mental retardation," the Developmental Disabilities Administration is to provide the defendant with necessary care or treatment. CP §3-106(b)(2).

[5] The statute does not require that the court explicitly find that the defendant is restorable in the commitment order. However, if the court finds that the defendant is *not* restorable, it is to take other action. *See* CP §3-106(d); *State v. Ray,* 429 Md. at 451-52.

5

receipt of a report from MDH containing new information, or upon motion of a party setting forth new facts or circumstances.  CP §3-106(c)(1)(ii)-(iii), (2).

If a defendant remains incompetent to stand trial, the court must eventually decide whether to take other action.  If it appears that the defendant remains incompetent and is not restorable – *i.e.*, "not likely to become competent in the foreseeable future" – the court may civilly commit the defendant if certain criteria are met.  CP §3-106(d).[6]  If the defendant has not been restored to competence and the criminal charges have not been resolved, the statute also requires the court to dismiss the criminal charges after specified periods of time (based on the nature of the charges and the potential penalty) have elapsed, unless the State petitions the court "for extraordinary cause" to extend the statutory deadline.  CP §3-107.

---

[6] The statute provides that the court shall:

> (1) civilly commit the defendant as an impatient in a medical facility that the [MDH] designates provided the court finds by clear and convincing evidence that:
> (i)   the defendant has a mental disorder;
> (ii)  inpatient care is necessary for the defendant;
> (iii) the defendant presents a danger to the life or safety of self or others;
> (iv) the defendant is unable or unwilling to be voluntarily committed to a medical facility; and
> (v)   there is no less restrictive form of intervention that is consistent with the welfare and safety of the defendant
> …

CP §3-106(d)(1).

Under the statute, MDH thus functions as a legislatively-designated expert that may assist the court in making the necessary findings and as the provider of treatment that may restore the defendant to competence. The statute contemplates a cooperative process in which MDH evaluates the defendant initially and periodically, provides reports and opinions to the court, and designates facilities at which evaluation and treatment take place. The court is charged with determining whether the criteria of incompetence, dangerousness, and restorability are met, revisiting those determinations periodically, and taking appropriate action based on its findings.

*Hospital Facilities Operated by MDH*

MDH's Behavioral Health Administration operates five psychiatric hospitals in Maryland. Maryland Code, Health-General Article ("HG"), §10-406. The Director of the Behavioral Health Administration is charged by State law with setting standards for admission to those facilities. HG §10-407.

There are four regional hospitals to which individuals are committed by courts in the region served by the particular hospital.[7] However, individuals charged with serious

---

[7] Spring Grove Hospital Center receives individuals committed by courts in Baltimore City and Baltimore, Calvert, Cecil, Charles, Harford, and St. Mary's counties. Thomas B. Finan Center receives individuals committed by courts in Allegany, Frederick, Garrett, and Washington counties. Eastern Shore Hospital Center receives individuals committed by courts in Caroline, Dorchester, Kent, Queen Anne's, Somerset, Talbot, Wicomico, and Worcester counties. Springfield Hospital Center receives individuals committed by courts in Anne Arundel, Carroll, Howard, Montgomery, and Prince George's counties.

7

crimes are generally committed to the Clifton T. Perkins Hospital Center ("Perkins"), regardless of the location of the court that ordered the commitment.

### B. Facts and Legal Proceedings

The basic facts of this case are set forth in the complaint and accompanying affidavit of Appellants' counsel, and in an affidavit supporting the motion to dismiss subsequently filed by MDH and the Secretary. These facts are largely undisputed, although the parties differ on the characterization of those facts, the inferences to be drawn from them, and their legal significance.

*The Complaint*

The complaint was filed on behalf of Fredia Powell, James Powell, Shane Dorsey, and Ivan Burrell in the Circuit Court for Baltimore City on June 8, 2016. Different labels have been applied to Ms. Powell, Mr. Powell, Mr. Dorsey, and Mr. Burrell in connection with this litigation. Each has been a *defendant* facing criminal charges in separate cases in the Circuit Court. Each also became a *plaintiff* prosecuting the civil complaint that initiated this action. Each now is an *appellant* pursuing the appeal before us. In the hope of avoiding confusion, we shall refer to them consistently in this opinion as "Appellants."

The complaint named MDH and the Secretary as defendants. Because the Secretary was sued in his official capacity as the head of MDH, we shall refer to the Appellees collectively as "MDH," unless the context requires otherwise.

The complaint alleged that each of the Appellants was a defendant in a criminal case in the Circuit Court for Baltimore City. In each case, according to the complaint, the Circuit Court determined prior to trial that the Appellant was both incompetent to stand

8

trial and dangerous.[8] In each case, the Circuit Court issued a written order on a pre-printed Judiciary form committing the Appellant to MDH as a result of those findings. (A copy of each order was attached as an exhibit to the complaint in this case).

In each case, the order directed the Department of Public Safety and Correctional Services to transport the Appellant immediately to Perkins "or such other facility as [MDH] designates." The designation of Perkins was a handwritten addition to the form order. Each order included another handwritten addition requiring that the Appellant be admitted as an inpatient "no later than" a specified date – in each case, the day after the date of the commitment order. In each case, additional paragraphs of the pre-printed form order provided for a status conference in six months and an annual hearing a year after the date of the order.[9]

None of the Appellants was admitted to Perkins by the deadline set forth in their respective orders. At the time of the filing of the complaint on June 8, 2016, each of the Appellants was being held in a pretrial detention facility, still awaiting admission to Perkins. After the filing of the complaint, each of the Appellants was admitted to Perkins

---

[8] It is not clear from the record in this case whether any of these Appellants pled not criminally responsible, or had the opportunity to do so, in their respective criminal cases.

[9] The dates set for these conferences and hearings have since passed. The record before us does not include the results of those hearings and conferences or what additional determinations, if any, were made as to each Appellant's competence, dangerousness, and restorability. According to Case Search, the Judiciary's on-line website concerning case records, it appears that Mr. Powell was found to be competent to stand trial in November 2016 and entered an Alford plea to one of the charges against him in February 2017.

on various dates between June 13 and June 30, 2016.  Instead of being admitted within one day of the commitment order, as stated in the handwritten addition to each form order, the Appellants were admitted between 12 and 36 days after the dates of their respective commitment orders.  The individual chronologies with respect to each Appellant were as follows:

- Fredia Powell was charged with second-degree attempted murder and first-degree assault.  On June 1, 2016, the Circuit Court found Ms. Powell incompetent to stand trial and dangerous because of a mental disorder and ordered that she be admitted to Perkins no later than the following day – June 2, 2016.  Ms. Powell was not admitted to Perkins until June 13, 2016.  In the meantime, Ms. Powell was confined in pretrial detention at the Baltimore City Detention Center.

- James Powell was charged with first-degree arson.  On May 25, 2016, the Circuit Court found Mr. Powell incompetent to stand trial and dangerous because of a mental disorder and ordered that he be admitted to Perkins no later than the following day – May 26, 2016.  Mr. Powell was not admitted to Perkins until June 21, 2016.  In the meantime, he was confined at the Baltimore City Booking and Intake Center.

- Shane Dorsey was charged with first-degree attempted murder and second-degree attempted murder.  On May 25, 2016, the Circuit Court found Mr. Powell incompetent to stand trial and dangerous because of a mental disorder and ordered that he be admitted to Perkins no later than the following day – May 26, 2016.  Mr. Dorsey was not admitted to Perkins until June 30, 2016.  In the meantime, he was confined at the Baltimore City Detention Center.

- Ivan Burrell was charged with first-degree attempted murder and second-degree attempted murder.  On May 25, 2016, the Circuit Court found Mr. Burrell incompetent to stand trial and dangerous because of a mental disorder and ordered that he be admitted to Perkins no later than the following day – May 26, 2016.  Mr. Burrell was not admitted to Perkins until June 16,

10

2016.  In the meantime, Mr. Burrell was confined at the Baltimore City Booking and Intake Center.

The complaint further alleged that the Appellants' cases were not unique and that MDH had failed, and continued to fail, to comply with the deadlines in court orders for the commitment of criminal defendants who had been judicially determined to be incompetent to stand trial and dangerous as a result of mental disorder.  Attached to the complaint as an exhibit was a letter dated April 28, 2016, from the Secretary to the Administrative Judge of the Circuit Court for Prince George's County.  In that letter, the Secretary described a "crisis" that prevented MDH from "responding expeditiously to court requirements."  The letter stated that MDH's in-patient facilities were full and, in fact, "over census," that MDH was at risk of having insufficient staff to provide the necessary care, that the problem was "particularly acute" at Perkins, and that the Secretary was forming a workgroup to solve the problems.  He asked for the Judiciary's assistance and participation in the workgroup.  The complaint characterized the Secretary's letter as justifying an "optional compliance" policy with respect to court orders.

The complaint alleged two causes of action, both premised to some extent on the fact that none of the Appellants had been admitted to Perkins at the time the complaint was filed.  Count One alleged that MDH had violated CP §3-106(b) with respect to each Appellant because it had failed to comply with the court order concerning that Appellant.  Count Two alleged that MDH had violated the Appellants' right to due process guaranteed by Article 24 of the Maryland Declaration of Rights.  In a prayer for relief, the complaint

11

asked the court to grant a motion for a preliminary injunction,[10] to hold a hearing on a motion to certify a plaintiff class, to set an expedited schedule, and to order declaratory and permanent injunctive relief.

A separate motion for class certification was filed with the complaint. The motion sought certification of a plaintiff class of "persons determined to be not competent to stand trial who are being denied court ordered mental health treatment in mental health facility." The motion sought certification of a plaintiff class under Maryland Rule 2-231(b)(2) and (b)(3),[11] with the Appellants designated as representatives of that class.[12]

---

[10] It does not appear from the record that such a motion has yet been filed.

[11] Maryland Rule 2-213(b)(2) provides for certification of a class if the threshold prerequisites for a class action – *i.e.*, numerosity, commonality, typicality, and adequacy of representation – are otherwise satisfied and "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

Maryland Rule 2-231(b)(3) provides for certification of a class if the prerequisites for a class action are otherwise satisfied and the court finds that questions of law or fact common to the members of the class predominate over questions affecting individual members "and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The rule sets forth additional factors to be considered in making that determination.

[12] As noted in the text, each of the Appellants has been judicially determined to be incompetent to stand trial – *i.e.*, he or she is unable to understand the proceedings or to assist in his or her defense. It seems anomalous that an individual who has been judicially determined to be unable to understand the proceedings in the criminal case and to assist in the defense of that case has the capacity to prosecute a civil case, much less act as the representative of others, without the assistance of a next friend or other fiduciary. *See* Maryland Rules 2-202(b) (suits by individuals under disability), and 1-202(m) (definition of "individual under disability"). Perhaps this has already been sorted out by the trial court – or would be in connection with the class certification motion. In any event, it is not before us.

12

*The Motion to Dismiss*

On July 13, 2016, MDH moved to dismiss the Appellants' complaint as moot and also moved to dismiss the claims for injunctive relief for failure to state a claim on which relief can be granted. With respect to the issue of mootness, MDH submitted an affidavit of the Director of the Behavioral Health Administration. That affidavit recounted the chronology on which each of the Appellants was admitted to Perkins. In the affidavit, the Director stated that, as of the time she made the affidavit, only three individuals on the waiting list for Perkins had been found incompetent to stand trial and that none of those individuals was the subject of an order with a specific deadline for admission. The affidavit also stated that there were no individuals who had been found incompetent to stand trial on the waiting lists for MDH's other four psychiatric hospitals. The affidavit stated that the hospitals were currently operating at or above maximum capacity and described efforts undertaken to reduce admission delays.

MDH also opposed the motion for class certification, arguing that the claims of the individual Appellants were moot and that, in any case, they failed to establish that the threshold requirements for a class action under Maryland Rule 2-231(a) – *i.e.*, numerosity, commonality, typicality, and adequacy of representation – were satisfied. In the alternative, MDH argued that any plaintiff class should be limited to individuals who had been found incompetent to stand trial and dangerous, and were designated for admission to Perkins within one day in a commitment order issued by the Circuit Court for Baltimore City.

*Circuit Court Ruling on Motion to Dismiss*

On August 30, 2016, the Circuit Court held a hearing at which it heard argument on the motion to dismiss.[13] The parties agreed that the court should decide the motion to dismiss before addressing the class certification motion.[14]

In a brief oral ruling at the conclusion of the hearing, the Circuit Court granted MDH's motion to dismiss the Appellants' claims for injunctive relief. The Circuit Court reasoned that CP §3-106(b) did not authorize a court to set a deadline for admission to a hospital and, accordingly, that a failure to comply with a deadline in an order did not violate the statute. The Circuit Court also held that the delays in placing the Appellants, even if the delays subsequent to the filing of the complaint were considered, did not violate Article 24 of the Maryland Declaration of Rights. The court did not explicitly address the issue of mootness. The court later entered a brief written declaratory judgment consistent with its oral ruling.

---

[13] All of the commitment orders in the Appellants' criminal cases had been issued by the same judge of the Circuit Court. A different judge of the Circuit Court presided at the hearing on the motion to dismiss in their joint civil case.

[14] The parties disagreed as to the whether the Circuit Court should delay determination of the class certification motion after it resolved the motion to dismiss for purposes of discovery. That dispute became moot when the court granted the motion to dismiss the complaint and is not before us.

14

*The Appeal*

The Appellants filed a timely notice of appeal. Prior to consideration of the appeal by the Court of Special Appeals, they filed a petition for a writ of *certiorari* with this Court, which we granted.

# II

## Discussion

Appellants contend that the Circuit Court erred when it concluded that MDH's delay in admitting Appellants to Perkins did not violate either CP §3-106(b) or Article 24 of the Maryland Declaration of Rights. MDH raises the preliminary issue of whether Appellants' claims are moot.

### A.     *Standard of Review*

When a circuit court considers a motion to dismiss a complaint for failure to state a claim, the court accepts the well-pleaded facts of the complaint, and reasonable inferences that may be drawn from those allegations, in the light most favorable to the plaintiff. *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 451 Md. 600, 609 (2017). The court's decision is thus based on its application of the law to those facts and inferences. Similarly, when a circuit court looks to undisputed facts outside the complaint – and the motion to dismiss is treated as one for summary judgment[15] – the court's decision likewise involves the application of the law to a given set of facts. *See Smith v. Danielczyk*, 400 Md. 98, 104-5 (2007). Again, the court is to consider the record

---

[15] *See* Maryland Rule 2-322(c).

in the light most favorable to the non-moving party and consider any reasonable inferences that may be drawn from the undisputed facts in favor of that party. *Mathews v. Cassidy Turley Maryland, Inc.*, 435 Md. 584, 598 (2013). In either case, the court's decision concerns a question of law. Accordingly, in reviewing that legal decision, an appellate court accords no special deference to the circuit court's legal conclusions.

### B.    *Mootness*

MDH renews the contention it made in the Circuit Court that the Appellants' claims are moot and urges us to decline to reach the merits of the appeal for that reason. A case is moot if "there is no longer an existing controversy between the parties, so that there is no longer any effective remedy which the court can provide." *Mercy Hosp., Inc. v. Jackson*, 306 Md. 556, 561 (1986) (citation and quotation marks omitted). Although there is no constitutional bar to this Court expressing its views on a moot issue, we rarely do so and usually dismiss the appeal without addressing the merits of the issue. *Id*. at 562.

In this case, Appellants were all admitted to Perkins by June 30, 2016. There is no longer a controversy between them and MDH over their admission to Perkins pursuant to their respective commitment orders. Thus, to the extent that they seek an injunction ordering their admission, the case is moot. However, this is not the case with respect to declaratory relief. It is not uncommon for an individual who has been found incompetent to stand trial to be restored to competence through treatment and then, for any variety of reasons, to later lapse back into incompetence. *See, e.g., Sibug v. State*, 445 Md. 265 (2015). Indeed, the statute contemplates that the court may need to reconsider the defendant's competence during the course of the prosecution. CP §3-104(c).

16

It is thus conceivable that one or more of the Appellants, having experienced that cycle, will again be the subject of a commitment order under CP §3-106(b) in connection with his or her criminal case. The question whether, and to what extent, the judge who issues that commitment order may specify a deadline for admission of the Appellant to Perkins and whether MDH's admission policy complies with the statute and Constitution would likely again be an issue. And, assuming that Appellant again challenges any delay under the MDH policy in his or her admission to Perkins, it seems likely that the Appellant would again be admitted to Perkins before that challenge reaches this Court. If we decline to decide the case on the ground of mootness, this important question of MDH's compliance with the statutory and constitutional provisions governing commitment of an incompetent defendant will escape decision.

This is thus a classic example of one of the limited exceptions to the mootness doctrine. Under that exception, even if no controversy exists at the precise moment that the case is before the appellate court, it will not be deemed moot if the controversy between the parties is "capable of repetition, yet evading review." *See State v. Parker*, 334 Md. 576, 585-86 (1994). This exception applies when "(1) the challenged action was too short in its duration to be fully litigated prior to its cessation or expiration; and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* Even if it is unlikely that the same party will be subject to the same action, the exception may also apply if the issue is of public importance and affects an identifiable group for whom the complaining party is an appropriate surrogate (even if

17

a class action is not certified).  *See LaValle v. LaValle*, 432 Md. 343, 351-52 (2013); *cf.*

*Loisel v. Rowe*, 660 A.2d 323, 330-32 (Conn. 1995).

Here, the Appellants alleged that delays that ultimately ranged from 12 days to 36

days in admitting them to Perkins for treatment violated not only the respective court

orders, but also the statute and the Maryland Declaration of Rights.  The challenged action

– the failure to admit the Appellants to Perkins – was too short in duration to be fully

litigated prior to its cessation.  It is also entirely possible that the complaining party – one

of the Appellants – would be subject to the same circumstances again.  Moreover, the

complaint alleges that the Appellants' experience is not unique and that other criminal

defendants found to be incompetent have experienced similar delays.  The Court of

Special Appeals recently concluded that this exception to the mootness doctrine applied

to a claim similar to the one made in this case.  *State v. Dixon*, 230 Md. App. 273, 277-78

(2016) (case concerning court order on conditions of detention for criminal defendant

awaiting psychological examination on competency and criminal responsibility was not

moot because the issue was capable of repetition, yet would evade review).

For that reason, we decline to dismiss this appeal on the ground of mootness.  We

do not reach the other exceptions to the mootness doctrine advanced by the Appellants.[16]

---

[16] Among other things, Appellants primarily argued that this case falls within the framework of *Frazier v. Castle Ford, Ltd.*, 430 Md. 144 (2013), in which this Court held that the defendant's effort to moot a potential class action by tendering individual monetary relief (that had previously been refused) to the putative class representative did not moot the case when the individual plaintiff had not had a reasonable opportunity to seek class certification.  However, this case does not involve a defendant "picking off" a proposed class representative by offering individual monetary relief that was denied prior to commencement of the litigation.  MDH has never disputed that it was required to

*C.*     *Alleged Violation of CP §3-106(b)*

Count One of the complaint alleges that MDH violated CP §3-106(b). The focus of the alleged violation has shifted slightly over the course of this litigation. At the time the complaint was filed, none of the Appellants had been admitted to Perkins and Count One might have been treated as alleging a violation of the statute for the failure to admit them at all. However, the complaint appears to acknowledge that the essence of the controversy is not a complete failure to admit criminal defendants committed by the court based on a finding of incompetency and dangerousness, but rather delay in admission beyond the deadline set by the court in the commitment order. By the time of the filing of the motion to dismiss, all four Appellants had been admitted to Perkins. Appellants then argued that the failure to admit them to Perkins within one day of their commitments violated the orders under which they were committed and, by dint of that violation, MDH also violated CP §3-106(b). The Circuit Court dismissed Count One on the rationale that there was no authority in the statute for a court to set a deadline for admission to Perkins.

Before us, Appellants argue both that CP §3-106(b) authorizes a court to set a deadline for admission to Perkins and that, when a court sets a deadline, the failure of MDH to meet that deadline is a violation of the statute. In our view, both arguments lack merit.

---

provide the relief – admission to Perkins – to the individual Appellants. Nor are Appellants alleging that MDH is flatly refusing to admit defendants found incompetent and dangerous to Perkins – just that there is a delay in "accepting the person within the time the court specified." The dispute concerns whether a delay in admission to Perkins amounted to a statutory and constitutional violation.

*Whether CP §3-106(b) Authorizes the Court to Set a Deadline for Admission*

First, the statute does not provide for a court to specify a date for admission of a criminal defendant to a psychiatric hospital after the court has made the requisite findings of incompetency and dangerousness for commitment. CP §3-106(b) provides:

> (1) If, after a hearing, the court finds that the defendant is incompetent to stand trial and, because of mental retardation or a mental disorder, is a danger to self or the person or property of another, the court may order the defendant committed to the facility that the Health Department designates until the court finds that:
>
> (i) the defendant no longer is incompetent to stand trial;
>
> (ii) the defendant no longer is, because of mental retardation or a mental disorder, a danger to self or the person or property of others; or
>
> (iii) there is not a substantial likelihood that the defendant will become competent to stand trial in the foreseeable future;
>
> (2) If a court commits the defendant because of mental retardation, the Health Department shall require the Developmental Disabilities Administration to provide the care or treatment that the defendant needs.

As is evident from the language of the statute, nothing in the text of CP §3-106(b) sets a deadline for admission, or authorizes the court to set one. Nor can such authority be found in other parts of the statute. This is in contrast to other portions of the statutory scheme that set deadlines or that confer explicit authority on the court to establish conditions. *See, e.g.,* CP §3-105(d)(2) (defendant entitled to have report of examination within seven days after court orders examination, although court may extend time "for good cause"); CP §3-

20

105(a)(2) (court "shall set and may change the conditions" of MDH examination of a defendant); CP§3-106(c) (court to hold hearing on defendant's competency within 30 days of certain events); CP §3-106(f)(1)(i) (court must hold hearing at least annually at which it must reconsider its findings as to defendant's competency and dangerousness)

The pre-printed form used by the Circuit Court as to each of the Appellants provided as follows in the pertinent paragraph:

> It is further ORDERED that upon receipt of this Order _____ will transport the Defendant immediately to _____ or such other facility as the Department designates.

In each case, the court modified this paragraph in three ways:  (1) It inserted "DPSCS" – the Department of Public Safety and Correctional Services − in the first blank; (2) it inserted "Clifton T. Perkins Hospital" in the second blank; and (3) it added a handwritten clause at the end of the paragraph requiring the defendant to be admitted as an inpatient "no later than" a specified date – in each case, one day after the date of the order.

As is evident, the pre-printed form contemplates that the court may designate a hospital, although it hedges that designation with the qualification "or such other facility as the Department designates," thus rendering the form consistent with CP §3-106(b), which provides for MDH (as opposed to the court) to designate the facility.  The pre-printed form also provides for a defendant to be transported "immediately" to the designated hospital.  Presumably, the drafter of the form contemplated immediate admission to the hospital as well – as opposed to waiting indefinitely outside the door of the facility.  The handwritten additions to each of the orders setting a one-day deadline for

21

admission of the Appellants could be viewed as an elaboration, a shortening, or even a lengthening of the term "immediately" in the pre-printed form. In any event, neither the term "immediately" nor any other timetable appears in the statute.[17]

Appellants essentially argue that CP §3-106(b) should be read to provide that "the court may order the defendant committed to the facility that the Health Department designates *by the date designated by the court ....*" We cannot revise the statute to that effect by judicial interlineation. *Price v. State*, 378 Md. 378, 387 (2003) ("A court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute...").

Appellants argue somewhat vaguely that the legislative history of the statute demonstrates that the General Assembly intended to authorize a court to set a specific deadline in a commitment order. They do not point to any particular evidence from the legislative history of CP §3-106(b) other than to make a general reference to the 2006 revision of statutory provisions concerning restorability. *See generally State v. Ray*, 429 Md. 566, 581-96 (2012) (summarizing legislative history of competency statute with focus on 2006 revision and restorability provisions).

As recounted in *Ray*, the only amendment made to CP §3-106(b) by the 2006 law was to add the restorability criterion that is now found in CP §3-106(b)(1)(iii) and related

---

[17] In contrast, a separate paragraph of the pre-printed form orders that an annual review hearing will be held on a date within one year and contains a space for the court to insert a date. In that instance, the statute specifically states a deadline for that event, and the failure to comply with that portion of the order would be a violation of the statute as well as of the order. *See* CP §3-106(c)(1)(i).

22

provisions. *See* Chapter 353, Laws of Maryland 2006. That provision concerned the end of an effort to restore a defendant to competency – not, as in these cases, the beginning. Consequently, that amendment did not address the timetable for the initial admission of a defendant to a facility under a commitment order. Moreover, no change was made in the operative language of the provision authorizing commitment of a defendant found to be incompetent and dangerous. Indeed, that language is essentially unchanged from the predecessor statute that was enacted in 1967. Chapter 709, Laws of Maryland 1967, *then codified at* Maryland Code, Article 59, §8(a). We have reviewed the various recodifications of that provision over the subsequent five decades and the extant legislative history for those recodifications.[18] Nothing supports Appellants' contention that the General Assembly affirmatively intended for a court to set a deadline for admission in a commitment order under what is now CP §3-106(b).

That is not to say that a court order issued under CP §3-106(b) may not include a deadline for admission to a facility. Nor does it mean that such a deadline in a court order may not be enforced through the court's contempt powers. But the authority for including a deadline must come from somewhere other than the statute. One possible source of such authority might be a constitutional constraint on government that a court must recognize in issuing an order. That is a question more pertinent to Count Two of the complaint, in

---

[18] *See, e.g.,* Chapter 407, Laws of Maryland 1970 (slightly revising and recodifying statute as Article 59, §24(a)); Chapter 21, Laws of Maryland 1982 (recodifying statute in Health-General Article, §12-104(b)); Chapter 501, Laws of Maryland 1984 (recodifying statute as Health-General Article, §12-105(b)); Chapter 10, Laws of Maryland 2001 (recodifying statute as CP §3-106(b)).

23

which the Appellants alleged a violation of due process.  It is addressed in Part II.D. of this opinion.

*Whether Failure to Meet a Deadline in a Court Order Violates CP §3-106(b)*

Second, even if the statute could be read to authorize the court to impose a deadline for admission or even if there is another source for that authority, a failure to meet that deadline does not mean that MDH has violated the *statute*.  There may be a violation of the *court order* issued pursuant to the statute, but that does not logically translate into a violation of the statute itself.  Many statutes and rules authorize courts to issue orders.  But a failure to comply with every condition or detail of a court order issued pursuant to a statute or rule is not *per se* a violation of the underlying statute or rule.[19]  If a court order has been violated, a party with standing, or the court itself, may institute contempt proceedings for that violation.[20]  *See, e.g.,* Maryland Rule 15-206(a).

---

[19] For example, if a court issues an injunction pursuant to Maryland Rule 15-502(b) ("the court … may grant an injunction upon the terms and conditions justice may require") and the enjoined party fails to comply with that injunction, the enjoined party may be in violation of the court order and subject to contempt proceedings for such a violation, but that violation would not be characterized as a violation of Rule 15-502.  Similarly, the Declaratory Judgments Act authorizes a court, among other things, to construe a contract.  Maryland Code, Courts & Judicial Proceedings Article, §3-407.  A party to the contract that fails to carry out its obligations, as construed by the court, may have committed a breach of the contract, but not a violation of the Declaratory Judgments Act.

[20] We are advised by MDH in its brief that the Circuit Court in fact conducted contempt proceedings with respect to the orders as to each of the Appellants and declined to hold MDH officials in contempt.  Similarly, Appellants appended to their brief an opinion and order issued by a circuit court in another jurisdiction that found the MDH in contempt based on a delay in admitting a criminal defendant to Perkins.

24

Finally, as part of their argument before us that the Circuit Court erred in dismissing Count One of the complaint, Appellants raise a number of issues that are not reflected in the complaint and that were not presented to the Circuit Court: whether the court had authority to set a deadline for admission to Perkins under its *parens patriae* authority over individuals with a disability,[21] whether MDH's conduct violated the constitutional separation of powers,[22] and whether CP §3-106(b) creates a "right to treatment" and an implied right of action to enforce that right.[23] None of these issues were raised in, or decided by, the Circuit Court and thus ordinarily would not be addressed by an appellate court. Maryland Rule 8-131(a). Nor were they identified as issues in the Appellants' petition for *certiorari*. In any event, none of these contentions advance the argument that a failure to meet a deadline for hospital admission in a commitment order is a violation of CP §3-106(b), as alleged in Count One.

---

[21] All of the commitment orders in this case were issued on a form that is designed to implement CP §3-106(b) and that explicitly cites that statute. There is no reference to the court's *parens patriae* authority.

[22] Appellants cite Article 8 of the Maryland Declaration of Rights and assert that MDH, as an executive branch agency, violated the constitutional separation of powers by failing to meet the deadlines in the commitment orders.

[23] This argument appeared for the first time in Appellants' reply brief in this Court. On its face, the statute does not provide for a generalized right to treatment for incompetent defendants. CP §3-106(b) provides for commitment only of criminal defendants found to be both incompetent *and*, as a result of mental disorder, dangerous. It does not provide for commitment – or treatment in some other forum – of a defendant found to be incompetent but not dangerous. Protection of the public and of the defendant, as well as treatment for restoration to competency, appears to be the purpose of commitment.

25

*D.     Alleged Violation of Substantive Due Process*

Count Two of the complaint asserts that MDH has deprived the Appellants of their substantive due process rights under Article 24 of the Maryland Declaration of Rights. Substantive due process refers to the principle that there are certain liberties protected by the due process clauses in the federal and State Constitutions from government interference, unless the governmental action is narrowly tailored to satisfy an important government interest. *Allmond*, 448 Md. at 609-10.

*Liberty Interest of Criminal Defendant Found Incompetent to Stand Trial*

A defendant in a criminal case who has not yet been convicted of the charge has a liberty interest in being free of confinement, unless there has been a determination of probable cause and pretrial detention is necessary to ensure the presence of the defendant for trial or the safety of the community. *United States v. Salerno*, 481 U.S. 739, 746-52 (1987); *Bell v. Wolfish*, 441 U.S. 520, 534 (1979); *see also Gerstein v. Pugh*, 420 U.S. 103 (1975). When the prosecution of the criminal case cannot proceed because the defendant is incompetent to stand trial, the defendant may not be detained on account of the criminal charge more than a reasonable period of time to determine whether there is a substantial probability that the defendant will become competent in the foreseeable future. *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). If the defendant is not restorable – *i.e.*, not likely to become competent within the foreseeable future – the government must either release the defendant or institute civil commitment proceedings. *Id.* Even if it is foreseeable that the defendant will become competent, the continued commitment of the defendant "must be justified by progress toward that goal." *Id.*

26

In *Jackson*, the United States Supreme Court confronted a case in which a defendant who was incompetent to stand trial on criminal charges had been indefinitely committed solely on the basis of his lack of capacity to face those charges. He had already spent three and a half years in confinement as a result of that commitment with no indication that he was likely to become competent in the foreseeable future. The Court held that the defendant could not constitutionally be held indefinitely in custody simply on the basis of his incompetency to stand trial on the criminal charges. *Id*. at 720. The Court declined to "prescribe arbitrary time limits," noting a lack of evidence in the record and the existence of "differing state facilities and procedures." *Id*. at 738.

*Jackson* thus concerned the timing of the termination of a commitment to restore a defendant to competence, while the case before us concerns the beginning of that process. *See State v. Ray*, 429 Md. 566, 585–87 (2012) (discussing restorability provisions of Maryland statute in relation to *Jackson*). However, the due process principle that the Supreme Court articulated in that case applies here as well: "[D]ue process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." 406 U.S. at 738.

In our view, this due process principle applies to the operation of the Maryland statutory scheme as follows: After a court has made the requisite findings of incompetence and dangerousness, a criminal defendant is committed to MDH for purpose of restoring the defendant to competence, while protecting the defendant (and others) from whatever danger the defendant's condition poses. Any delay in transferring that defendant

27

to a designated facility pursuant to a commitment order must be reasonable in relation to the purpose of treating the defendant while protecting both the defendant and the public.

*Facial Challenge v. As-Applied Challenge*

The parties have debated whether Count Two poses a "facial challenge" or an "as applied challenge" to the MDH policy on admitting committed defendants to Perkins. In a facial challenge based on substantive due process, a law or policy is invalid only if the challenger can demonstrate that there is no set of circumstances under which it would be valid. *Allmond,* 448 Md. at 615-16. An as-applied challenge is defined as a claim that a statute or government practice "is unconstitutional on the facts of a particular case or in its application to a particular party." *Motor Vehicle Administration v. Seenath*, 448 Md. 145, 181 (2016).

In dismissing Count Two, the Circuit Court opined that it believed that Count Two asserted a facial challenge and found it meritless. The court went on to say that, even if it regarded the claim as an as-applied challenge, it did not believe that the facts before the court concerning the delays in admission rose to a constitutional violation.

The tendency to regard Count Two as a facial challenge to the MDH policy is understandable given the generality of the allegations made in that count. It first states generally that "the conduct of [MDH and the Secretary] violate Article 24 …" Complaint ¶35. It further alleges that MDH "without right or authority (and in violation of a court order), intentionally and deliberately, or at least with deliberate indifference" violated the due process guarantee of Article 24 when it failed to admit the Appellants to a mental health facility and forced them to remain in pretrial detention when they had not been

28

convicted of a crime and had been determined to be incompetent to stand trial. Complaint, ¶¶36, 37. It goes on to allege that, in addition to a liberty interest in being free of pretrial detention, the Appellants have a liberty interest "in restorative treatment" and "in reasonable care and safety and other treatment." Complaint, ¶38. It further alleges that there was "no legitimate governmental interest that justifies holding incompetent criminal defendants in jail" after a court had issued a commitment order and concludes that Appellants were being "unlawfully and unconstitutionally punished" in violation of Article 24. Complaint, ¶¶39, 40. In their opening brief, Appellants summarize these allegations as alleging that MDH is "violating Article 24 by failing to admit [A]ppellants … into a [MDH] facility by the date set in the court's order or within a constitutionally permissible period of time." Appellants' Brief at 7.

If Count Two is treated as a facial due process challenge, we have little difficulty agreeing with the Circuit Court that it does not survive a motion to dismiss (or for summary judgment). It is not the case that no delay at all in admission is tolerated by the due process clause. *See Lakey v. Taylor*, 435 S.W.3d 309 (Tex. Ct. App. 2014) (state health department's use of waiting list that resulted in delays of admission of incompetent defendants to state psychiatric hospitals was not a facial violation of substantive due process). Appellants themselves implicitly accept that some delay is inevitable or permissible as they did not challenge the one-day (or slightly greater) delay allowed by their respective commitment orders.

While it is tempting to treat the Appellants' due process claim as a facial challenge to the MDH admission policy, at the time the complaint was filed, all of the Appellants

29

were still in pretrial detention awaiting admission to Perkins. Thus, it is understandable that Count Two did not relate the alleged due process violations to specific delays applicable to the Appellants, as the full extent of the delay was unknown. Perhaps it can be inferred that Appellants were asserting that the delays in admission that they had already experienced as of the time of the filing of the complaint – which, at that time, ranged from seven days (Fredia Powell) to 14 days (the other three Appellants) – exceeded whatever delay would be tolerated by the substantive due process guarantee.[24] In this context – whether MDH's motion is considered as a motion to dismiss or a motion for summary judgment – we are to take inferences in favor of the Appellants. We will construe Count Two as an as-applied challenge to the reasonableness of the delay in their respective admissions to Perkins under the MDH policy.

*Reasonableness of the Delay in Admission*

What delay is reasonable with respect to a particular defendant depends on the circumstances of the particular case: *e.g.,* the nature of the defendant's disorder, the circumstances of the defendant's confinement at the pretrial detention facility, the treatment needs of the defendant, the treatment needs of other patients at the hospital facility, the need to provide a setting to deal with the nature of the dangerousness found by the court with respect to that defendant, the basis for a policy that results in a waiting

---

[24] The Appellants did not amend the complaint to allege the actual period of delay before their respective admissions to Perkins. That information has been provided by MDH in connection with its motion to dismiss, but is apparently not disputed.

list, and the experience under that policy. While the due process clause sets some outside constraints, a one-size fits all approach is unlikely to be reasonable.

Other courts that have been called upon to decide whether a delay in the transfer of an incompetent defendant from pretrial detention to a psychiatric hospital have come to varying conclusions as to what constitutes an acceptable delay based on the particular circumstances. In contrast to this case, those courts have generally had the benefit of a detailed record after a trial or evidentiary hearing. One cannot simply compare the delays permitted or proscribed in those cases and attempt to decide whether a delay of 12 or 36 days in this case violated due process.

Some cases have simply held that a lengthy delay is unacceptable under due process without specifying what, if any, delay would pass muster. *Disability Law Center v. Utah*, 180 F.Supp.3d 998, 1004 (D. Utah 2016) (denying motion to dismiss due process claim on behalf of incompetent defendants forced to wait as much as six months for admission to state psychiatric hospital); *Terry ex rel. Terry v. Hill*, 232 F.Supp.2d 934, 938, 944 (E.D. Ark. 2002) (concluding that the six-month average wait in Arkansas for a defendant to be admitted to the state psychiatric hospital was "far beyond any constitutional boundary").

Other courts that have found delays to be violative – or likely violative – of due process have issued remedial injunctions that presumably reflect what those courts believed to be reasonable, and presumably acceptable for purposes of due process. In *Advocacy Center for the Elderly and Disabled v. Louisiana Department of Health and Hospitals*, 731 F.Supp.2d 603, 620, 627 (E.D.La. 2010), the court conducted an extensive evidentiary hearing on a motion for a preliminary injunction and concluded that the

31

plaintiffs were likely to prevail on their claim that extended delays in the admission of incompetent defendants to the state psychiatric hospital – some longer than nine months – violated due process. The court issued a preliminary injunction setting a 21-day deadline for admission of a defendant following a commitment order.

In *Cooper v. Kliebert*, 2016 WL 3892445 (M.D. La. 2016), in an action similar to this one challenging delays in the hospital admission of pretrial detainees who had been found incompetent to stand trial, a federal district court denied a motion to dismiss a due process claim, among others. In recounting the history of the case, the court noted that a previous litigation concerning the same issue had resulted in a consent decree that set a 30-day deadline for admission of an incompetent defendant to a state hospital following a commitment order.

Several courts have required admission within a period as short as seven days of a commitment order, although those time periods have been made with reference to legislative determinations or qualified in other ways. In *Oregon Advocacy Center v. Mink*, 322 F.3d 1101 (9th Cir. 2003), the Ninth Circuit affirmed an injunction requiring hospital admission within seven days of commitment order by a state court in Oregon. That court held that the trial court had not abused its discretion in setting a "reasonably short time limit" in light of the circumstances of the case and the fact that the Oregon state legislature itself had chosen the same time limit in a previous version of the pertinent statute. Similarly, in *Trueblood v. Washington State Department of Social and Health Services*, 101 F.Supp.3d 1010 (W.D. Wash. 2015), a federal district court issued an injunction requiring the Washington state health department to commence evaluations and

restorative services for criminal defendants within seven days of a state court order. The order with respect to evaluations was later reversed by the Ninth Circuit. 822 F.3d 1037 (9th Cir. 2016). (The state did not appeal the injunction with respect to hospital admissions for treatment.). It is notable that in both cases, the courts gave significant weight to the fact that the state legislature had established statutory deadlines or goals for evaluations and provision of services. *See Mink*, 322 F.3d at 1122 n.13; *Trueblood*, 822 F.3d at 1040-41 & n.2, 1046.

In *People v. Brewer*, 235 Cal. Rptr. 4th 122 (Cal. App. 2015), the California intermediate appellate court considered an injunction issued by a trial court requiring admission to a psychiatric hospital within seven days of commitment or of the facility's receipt of certain information from the committing court, whichever was later. That period was later extended to 14 days, and, ultimately overturned by the appellate court in light of intervening legislative action. In remanding the case for the trial court to determine whether a 14-day deadline remained reasonable, the court suggested that a benchmark in determining reasonableness was the 90-day statutory deadline for the hospital to provide a progress report to the court. In a subsequent case, the same appellate court later affirmed that a 60-day deadline for transferring incompetent defendants to a state psychiatric facility complied with due process requirements. *In re Loveton*, 244 Cal. App. 4th 1025 (2016).

None of these cases is necessarily a template for the result in this case. It may well be that the Circuit Court's assessment that the delays experienced by the Appellants were reasonable under the circumstances and did not violate the substantive due process

33

guarantee of Article 24 is correct.  But we cannot reach that conclusion as a matter of law based on the limited record in this case.

### III

### Conclusion

For the reasons set forth above, a failure by MDH to comply with a deadline for admission to a psychiatric hospital set forth in a commitment order under CP §3-106(b) may violate the order, but is not a violation of the statute itself.  Accordingly, Count One of the Appellants' complaint does not state a claim upon which relief may be granted and was properly dismissed by the Circuit Court.

To the extent that Count Two of the complaint challenges the MDH policy as violating on its face the guarantee of substantive due process in Article 24 of the Maryland Declaration of Rights, it also fails to state a claim upon which relief may be granted.  To the extent that Count Two alleges that the MDH policy violates due process as that policy was applied to the Appellants, it does state a claim upon which relief may be granted.  Whether that claim has merit depends on the particular circumstances of each case.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED AS TO COUNT ONE OF THE COMPLAINT AND VACATED AS TO COUNT TWO OF THE COMPLAINT.  CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.  COSTS TO BE PAID ONE-HALF BY APPELLANTS AND ONE-HALF BY APPELLEES.**

Circuit Court for Baltimore City
Case No. 24-C-16-003484
Argument: March 31, 2017

IN THE COURT OF APPEALS
OF MARYLAND

No. 77

September Term, 2016

_____

FREDIA POWELL, ET AL.

V.

MARYLAND DEPARTMENT OF HEALTH,
ET AL.

_____

Barbera, C.J.
Greene
Adkins
McDonald
Hotten
Getty
Raker, Irma S. (Senior Judge,
Specially Assigned),

JJ.

_____

Dissenting Opinion by Getty, J.

_____

Filed: August 28, 2017

Respectfully, I dissent.

To briefly summarize the central facts of this case, the Circuit Court for Baltimore City issued a series of separate commitment orders mandating that Appellants, criminal defendants who had been found incompetent to stand trial and dangerous, be committed to the care of Appellee, Maryland Department of Health ("MDH") at the Clifton T. Perkins Hospital ("Perkins")[1] within one day after the date of each respective commitment order. Majority Slip Op. at 2, 7-9. Appellants subsequently brought suit challenging an MDH policy that resulted in a delay in their admission to Perkins as a violation of the statute authorizing their commitment and of the Maryland Declaration of Rights. *Id.* at 8-11. MDH brought a motion to dismiss those claims, pointing out that all Appellants had ultimately been admitted to Perkins within 12 to 36 days from the date of their respective commitment orders. *Id.* at 9, 12-13. Thereafter, the trial court granted the motion to dismiss. *Id.* at 14.

I would affirm the trial court's grant of the motion to dismiss. In my view, the Appellants' claims were moot because they had already obtained the relief they sought, namely, admission to Perkins. Although there are instances in which it is appropriate to address a moot question that may arise again and would otherwise evade review, this case is not one of them. As I shall explain, remanding this particular case for further proceedings will not resolve the rights of Appellants in the event that they are once again committed to

---

[1] The commitment orders at issue specified Appellants be committed to Perkins or other facilities designated by MDH. Majority Slip Op. at 9. However, as the Majority notes, "individuals charged with serious crimes are generally committed to [Perkins], regardless of the location of the court that ordered the commitment." *Id.* at 7.

MDH and once again face a delay in admission, or provide helpful guidance on a "recurring matter of public concern." *See La Valle v. La Valle*, 432 Md. 343, 352 (2013) (quoting *Office of Pub. Def. v. State*, 413 Md. 411, 423 (2010)).

Furthermore, I write out of concern that the Majority has failed to address a critical issue raised by the facts of this case—whether a trial court has the authority to set a binding deadline by which MDH must place a defendant committed to its custody in an inpatient psychiatric treatment facility. I doubt that a trial court has the authority to set such a deadline without, at a minimum, conducting a hearing and making findings of fact that such a deadline is necessary to prevent a violation of a defendant's due process rights. Moreover, trial courts should be mindful of the limited number of beds available in inpatient facilities and give substantial deference to MDH's policy and determinations as to the timing of admissions to those facilities. Therefore, I would hold that trial courts should generally refrain from imposing admission deadlines unless there are extraordinary circumstances that necessitate a rapid or immediate admission to inpatient care.

### A. Mootness

"A case is moot when there is no longer an existing controversy between the parties at the time it is before the court so that the court cannot provide an effective remedy." *Hammen v. Balt. Cty. Police Dep't*, 373 Md. 440, 449 (2003) (quoting *Coburn v. Coburn*, 342 Md. 244, 250 (1996)). This Court generally dismisses moot cases without deciding the merits of the controversy, in order to avoid issuing advisory opinions or resolving purely academic questions. *See Green v. Nassif*, 401 Md. 649, 655 (2007); *In re Riddlemoser*, 317 Md. 496, 502 (1989).

2

However, the Court has the authority to express its opinions as to moot questions, and has done so in some limited circumstances. One of those limited exceptions is when a moot question is "capable of repetition, yet evading review." Majority Slip Op. at 17 (quoting *State v. Parker*, 334 Md. 576, 585 (1994)). The exception generally applies when "(1) the challenged action was too short in its duration to be fully litigated prior to its cessation or expiration; and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* (quoting *Parker*, 334 Md. at 585). A court may also apply the exception to consider a moot issue even when it is "unlikely that the same party will be subject to the same action," so long as the issue is "of public importance and affects an identifiable group for whom the complaining party is an appropriate surrogate[.]" *Id.* As the Court explained in *La Valle*, when a matters' recurrence

> will involve a relationship between government and its citizens, or a duty of government, and upon any recurrence, the same difficulty which prevented the appeal at hand from being heard in time is likely again to prevent a decision, then [the] Court may find justification for deciding the issues raised by a question which has become moot, particularly if all these factors concur with sufficient weight.

432 Md. at 352 (quoting *Lloyd v. Bd. of Supervisors of Elections of Balt. Cnty.*, 206 Md. 36, 43 (1954)).

Here, prior to the trial court's grant of the motion to dismiss, each of the four Appellants had obtained the relief sought in their Complaint, namely, admission to Perkins. Thus, Appellants' claims would ordinarily be deemed moot, and the trial court's grant of the motion to dismiss upheld on that basis. The Majority, however, declines to hold that

3

Appellants claims are moot. The Majority believes that Appellants may, at some point in the future, again "be the subject of a commitment order." Majority Slip Op. at 17. According to the Majority, in such event "[t]he question whether, and to what extent, the judge who issues that commitment order may specify a deadline for admission of the Appellant to Perkins and whether MDH's admission policy complies with the statute and Constitution would likely again be an issue." *Id.* And, the Majority notes that if one of the Appellants were to "again challenge[] any delay under the MDH policy in his or her admission to Perkins, it seems likely that the Appellant would again be admitted to Perkins before that challenge reaches this Court." *Id.* Furthermore, the Majority concludes that even if the individual Appellants do not face the same circumstances again, Appellants' Complaint "alleges that the Appellants' experience is not unique and that other criminal defendants found to be incompetent have experienced similar delays. *Id.* at 18. Therefore, the Majority would decline to dismiss the appeal as moot. *Id.*

It is highly speculative to suggest that, simply because Appellants have once been the subject of a commitment order, there is a "reasonable expectation" that at some point in the future they will once again be the subject of a commitment order, and once again face a delay in admission due to MDH policy. However, even if the Majority is correct that this case is capable of repetition as to these particular defendants, the Court should still hold Appellants' claims to be moot, as there is no point to remanding the case and expending further judicial resources to resolve their remaining claim.

4

Appellants' sole surviving claim[2] on remand is that the MDH policy "as-applied" to their respective cases caused a delay in admitting them to Perkins that was sufficiently unreasonable as to violate the substantive due process guarantees of the Maryland Declaration of Rights. *Id.* at 28-30, 34. But, the Majority holds that weighing such a claim involves a totality of the circumstances inquiry, including "the nature of the defendant's disorder, the circumstances of the defendant's confinement at the pretrial detention facility, the treatment needs of the defendant, the treatment needs of other patients at the hospital facility, the need to provide a setting to deal with the nature of the dangerousness found by the court with respect to that defendant, the basis for a policy that results in a wait list, and the experience under that policy." *Id.* at 30-31.

Therefore, judicial resolution of Appellants' as-applied substantive due process claim will involve a detailed, fact-specific judicial inquiry into the circumstances that existed at the time of Appellants' commitment order and delay in admission to Perkins—circumstances that existed over a year from the date of this opinion. The court will thus need to evaluate each Appellant's mental state, circumstances, and treatment needs that **obtained over a year ago**, as well as the **previous** state of MDH policy and basis for that policy. This will doubtless be a difficult inquiry; Appellants are no longer in

---

[2] I agree with the Majority's conclusion that Count One of Appellants' Complaint failed to state a claim for which relief could be granted. Majority Slip Op. at 34. And, I agree with the Majority that other claims raised by the Appellants that were not included in their Complaint or argued before the trial court were not preserved for this Court's review pursuant to Maryland Rule 8-131. *See id.* at 25.

treatment at Perkins, and MDH will be required to expend significant time and resources to track down records and personnel pertaining to their stay at Perkins.

More importantly, such an inquiry is simply unnecessary. If the Majority is correct and one or more Appellants are once again ordered committed for psychiatric treatment at some time in the future, their own mental state and treatment needs will doubtless have changed from what they were in 2016, as will the needs of others committed to MDH and, in all likelihood, MDH policy regarding the wait list for admission. The trial court's resolution of Appellants' instant claim will thus simply have no application to a future delay in admission involving one of the Appellants.

Nor is the resolution of Appellants' claim likely to have a broader impact on other criminal defendants facing a delay in admission to MDH treatment facilities. Appellants filed a motion with the trial court to be certified as the representatives of a plaintiff class under Maryland Rule 2-231. But given the highly individualized nature of an "as-applied" substantive due process, which is dependent on the specific facts of a given defendant's condition, it is difficult to envision how Appellants could meet the requirements of class certification for that claim. In the absence of a class certification, further proceedings as to Appellants substantive due process claim will not provide relief to other defendants found incompetent who have faced delays in admission to Perkins or other MDH facilities. And, while a Maryland appellate court's resolution of a legal claim has binding precedential weight, a Maryland trial court's holding does not. *See e.g.*, *Fraternal Order of Police Montgomery Cty. Lodge 35, Inc. v. Manger*, 175 Md. App. 476, 491 (2007) ("There is no decision or statute which requires one *nisi prius* judge to accept as final and

6

conclusive the decisions on the law before trial of another judge or court.") (quoting *Placido v. Citizens Bank & Trust Co. of Md.*, 38 Md. App. 33, 45 (1977)). Thus, the trial court's resolution of the Appellants' claim on remand will not necessarily be adopted or applied by other trial courts faced with delays in admitting criminal defendants to inpatient psychiatric treatment.

In short, now that Appellants have all been admitted to Perkins, Appellants' claim presents a purely academic question, and the trial judge's resolution of that claim will have no practical consequence or effect. Therefore, Appellants' claim is precisely the kind of issue properly deemed moot.

**B. Deadlines for Admission to an MDH Treatment Facility**

As I have explained, a trial court conducting an after-the-fact examination of whether MDH's wait list policy violated a defendant's substantive due process rights is likely to be a waste of judicial resources. However, if a trial court is concerned that MDH policy is likely to result in a delay in admitting a criminal defendant who has been found incompetent to stand trial and dangerous to a treatment facility, and that the delay is likely to be of a duration and extent that it would violate the defendant's substantive due process rights, the trial court could issue a deadline for admission in the commitment order itself. Indeed, that is exactly what occurred in the instant action—the Baltimore City circuit court issued commitment orders mandating that each Appellant be placed in Perkins within one day after the date of his or her respective commitment order. Majority Slip Op. at 8-9.

The Majority opinion suggests that a trial court may have the authority to issue such a deadline for admission in a commitment order under the due process guarantees of the

7

Maryland Constitution and Maryland Declaration of Rights. Majority Slip Op. at 23. However, that suggestion raises significant legal and policy concerns that the Majority has not addressed.

First, at the time of a commitment order, a delay in admitting the defendant yet to occur, and the controversy between the defendant and MDH is not yet ripe. Thus, a deadline in a commitment order is in the nature of a prophylactic measure intended to prevent a violation of a defendant's due process rights before it actually occurs. Courts have sanctioned such prophylactic measures in other contexts in order to preserve criminal defendants' constitutional rights. *See e.g., Smith v. State*, 186 Md. App. 498, 512 (2009), aff'd, 414 Md. 357 (2010) (noting that the Supreme Court has consistently held that *Miranda* warnings are a prophylactic measure "designed to implement the undergirding Fifth Amendment privilege"). But, the Majority does not address or explain whether such a prophylactic measure is necessary in order to protect the rights of defendants who have been committed to the treatment of MDH.

Second, even if a trial court does have the authority to impose an admission deadline as a prophylactic measure, it would not be appropriate to do so for every defendant. As the Majority notes, not every delay in admission is *per se* unreasonable and a violation of a defendant's substantive due process rights. Majority Slip Op. at 29 ("It is not the case that no delay at all in admission is tolerated by the due process clause."). Instead, it is only when a delay is unreasonable "in relation to the purpose of treating the defendant while protecting both the defendant and the public" that a delay violates due process protections. *Id.* at 27-28. Thus, at a minimum, a trial judge who desires to impose such a deadline on

8

the basis of substantive due process should be required to conduct an inquiry into whether a deadline is necessary under the circumstances to protect the individual defendant's rights. After conducting such an inquiry, if a trial judge finds that a defendant is likely to face a delay in admission, and that delay is likely to violate his substantive due process rights, then a deadline may be appropriate.

In addition to the factors stated by the Majority, *see id.* at 30-31, trial courts should be mindful that the General Assembly has not mandated a timeline by which MDH must admit a defendant committed to its care to an inpatient treatment facility. Furthermore, the record of this case reflects that MDH hospitals have recently been "operating at or above maximum capacity[,]" and thus may face great difficulties in immediately or rapidly admitting a particular defendant in response to a court order. *Id.* at 13. And, MDH is in the best position to assess the overall needs and dangerousness of all of the defendants committed to its care, and to determine from that information the order in which defendants are admitted as beds become available. For all those reasons, trial courts deciding whether to set a deadline for admission should generally be deferential to MDH's wait list policy and be reluctant to "jump the line" by ordering that a particular defendant be admitted immediately or rapidly. Accordingly, I would hold that trial courts should generally refrain from imposing an admission deadline similar to the one seen in this case—a single day, or other relatively short period of time—unless there are extraordinary circumstances such that a defendant's immediate or rapid admission to inpatient care is necessary.

## C. Conclusion

Here, Appellants had already obtained the relief they sought prior to the trial court's grant of MDH's motion to dismiss and, consequently, their claims are moot. I would decline to apply the exception for review of moot claims that are "capable of repetition, yet evading review." In my view, a remand to the trial court to conduct a further inquiry into Appellants' surviving due process claim would not resolve Appellants' rights in the event that they are once again committed to MDH for inpatient treatment. Nor would such an inquiry provide relief to other defendants found incompetent who have faced delays in admission to Perkins, or provide direction to other trial courts faced with similar situations.

Moreover, the Majority's holding today suggests that a trial court has the authority to issue a deadline for the admission of a defendant to an MDH facility to prevent a violation of the defendant's substantive due process rights. I would hold that a trial court lacks the authority to impose such a deadline without, at a minimum, conducting an inquiry and making findings of fact that such a deadline is necessary to prevent a violation of a defendant's substantive due process rights. Furthermore, I would hold that trial courts should generally defer to MDH policy and refrain from imposing such deadlines unless there are extraordinary circumstances that necessitate a rapid or immediate admission to inpatient care.

For the above stated reasons, I respectfully dissent.